LEON CHAYT ET AL. *v.* MARYLAND JOCKEY CLUB

[No. 20, January Term, 1941.]

*Decided March 5th, 1941.*

The cause was argued before SLOAN, MITCHELL, JOHNSON, DELAPLAINE, and COLLINS, JJ.

*Edward H. Burke and Robert R. Bowie,* with whom was *William Hoffenberg* on the brief, for the appellants.

*William A. Grimes,* with whom were *Ritchie, Janney, Ober & Williams* on the brief, for the appellees.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court vacating an injunction restraining the use of certain premises of the Maryland Jockey Club.

The appellants are the owners and occupiers of a house and lot on Rogers avenue in Baltimore. To the south of the house owned by the appellants lies the race track of the Maryland Jockey Club. Immediately contiguous to the race track itself are several lots of ground indicated on the plat in evidence as lots 22-36. These lots had been acquired by the Jockey Club prior to 1929 and at a time when no zoning restrictions were imposed on the property in this locality and had been prior to 1939 used by the Jockey Club only as a parking ground for automo-

biles. The lots have not been enclosed by the cyclone fence which surrounded the remainder of the race track proper. On September 13th, 1938, the Jockey Club applied for a permit to construct a stable on these lots. At the suit of these appellants and on the ground that the property was zoned as a residential district and not subject to a non-conforming use, this court held that an injunction restraining the issuance of the permit should have been granted (*Chayt v. Zoning Appeals Board,* 177 Md. 426). The injunction was finally perfected June 26th, 1940, after a second appeal to this court. *Chayt v. Board of Zoning Appeals,* No. 52 April Term, 1940; 13 A. 2nd 614.

In the meantime on February 27th, 1939, Ordinance No. 1430 to reclassify the property from residential to a first commercial use district was introduced in the City Council, but expired with that particular council on May 2nd, 1939. On May 31st, 1939, Ordinance No. 38 (later renumbered 110) was introduced, which was identical with Ordinance No. 1430. This ordinance was later amended so that at its final passage its effect was to reclassify only the lots of appellee there in dispute from residential to first commercial.

Ordinance No. 38 before its amendment was the subject of a public hearing on October 9th, 1939, after public notice given by advertisement in the New-Post of September 22nd, 1939. As the result of certain opposition developed at this hearing, the ordinance was amended and on December 18th, 1939, was reported favorably, substantially as described. A hearing on the amended ordinance was held on December 20th, 1939, and was on that day passed and was approved by the Mayor on January 10th, 1940.

Following the passage of this ordinance, appellee petitioned the court for the dissolution of the injunction against the issuance of a permit for the erection of a stable. From an order dissolving the injunction, this appeal is taken.

It is first urged by appellants that Ordinance No. 110 is invalid, since the hearing authorized by the statute, Code, article 66 B., Secs. 1-9 to be held on each ordinance was not properly had. It is conceded that a hearing was held on October 9th, 1939, at which all interested parties were present and were given an opportunity to present their views. It is insisted, however, that this hearing was adjourned with the understanding that it would be reconvened after notice to the protestants, and that the proper notice of the second meeting was not in fact given. William Hoffenberg, Esq., appearing as counsel for these appellants, was notified on December 18th that a subsequent hearing would be held on December 20th. We think under these facts the statute was sufficiently complied with. At the first hearing ample opportunity was given to each side to the controversy to air its views and protests were filed in writing. There is no requirement that each side be given all the time it feels it desires, provided it is given a reasonable time within which to present its protests.

The ordinance is also attacked on the ground that it provides for "spot" zoning. The lots which are here effected by the reclassification from residential to a first commercial use district lie between appellants' lands and Ingleside avenue, which is immediately north of numerous other properties owned by the Maryland Jockey Club. For the most part the other properties were under the terms of the original Zoning Ordinance classified as a residential use district, but under the provisions of paragraph 11, Ordinance No. 1247, the Maryland Jockey Club continued to use its properties as previously, because they were subject to a non-conforming use. The question arises as to whether the reclassification of the properties on the north side of Ingleside avenue is "spot" zoning, which term, as usually defined, signifies a carving out of one or more properties located in a given use district and reclassifying them in a different use district. While it is true that in one sense this definition is gratified by the present ordinance, such an argument over-

looks and disregards the fact that Pimlico, owned by the Maryland Jockey Club, was not disturbed by the passage of Ordinance No. 1247, because of the non-conforming use provisions of the Zoning Ordinance. It is thus seen that while that ordinance in general classified the property of the Maryland Jockey Club as a residential use district, yet the effect of paragraph 11 was such as to place it in a first commercial classification, and this being true we have the same result as if it had originally been classified as a first commercial use district. Upon these considerations, we conclude it unnecessary to express an opinion upon the validity of "spot" zoning, because that question is not here presented.

It is also insisted that Ordinance No. 110 is invalid, because prior to its enactment it was not referred to the City Planning Commission in accordance with section 264F of the Baltimore City Charter, which provides that amendments to the Zoning Ordinance introduced into the City Council be referred to the Commission for a report and recommendation. The section under consideration was by virtue of the provisions of the Constitution of Maryland, Article XIA, section 5, adopted by the qualified voters of Baltimore City at an election held May 2nd, 1939, and under the same constitutional provisions did not become effective until June 2nd, in the same year, but the amendatory ordinance was originally introduced on May 31st before the effective date of the section referred to. In view of these considerations, it cannot be held that the ordinance is invalid for the reason stated, unless the section to which reference has been made be given a retroactive effect, and since from a consideration thereof no intention appears that it operate retroactively, the contention in that behalf is without force.

*Clark v. Baltimore,* 29 Md. 277 at 283; *Hemsley v. McKin,* 119 Md. 431, at 441; *Vandiver v. Fidelity Savings Bank,* 120 Md. 619, at 623; *Dryden v. Baltimore Trust Company,* 157 Md. 559, at 563; *Rowe v. Cullen,* 177 Md. 357.

Finally the argument is presented that in order to support the validity of this ordinance it must be shown that it was passed in the valid exercise of the police power. It is unquestionably true that the validity of an ordinance imposing restrictions on land must be tested by the requirements of the police power. As this court said in *Lewis, Inc. v. Baltimore,* 164 Md. 146, at page 152: "As stated in the case of *Goldman v. Crowther,* restrictions imposed by the state upon private property can only be justified where they are required for the reasonable protection of the public health, morals, safety, or welfare, but where any such necessity exists, the power may be invoked to sustain them. *Pocomoke City v. Standard Oil Co.,* 162 Md. 377; *Lipsitz v. Parr,* 164 Md. 222; *Goldman v. Crowther,* 147 Md. 282; *Tighe v. Osborne,* 149 Md. 349." On that point there can be no successful contradiction. That principle is quite different, however, from the situation here presented. We have been cited no case applying this principle to a situation of rezoning from a higher to a lower class.

In order to impose restrictions some valid exercise of the police power must be proven. But such power is invoked for the protection of the property restricted and not to give protection to surrounding property. It is basic to the law of property that a man shall be allowed the widest use of his property consonant with the protection of his neighbors. In order to justify therefore a restriction of that use, it must be shown that such restriction is in some manner related to the police power of the sovereign.

The imposition of that restriction, however, creates no vested right in the continuance of that condition.

Since, therefore, appellants acquired no vested right under the original Zoning Ordinance, it follows that the amending ordinance placing nearby properties in a lower classification, and to that extent freeing such properties from the burdens of the original ordinance, deprives appellants of no legal rights inasmuch as it takes nothing from them that they have a right to insist upon.

In *Sugar v. North Baltimore M. E. Church*, 164 Md. 487, the court was called upon to consider the provisions of the Zoning Ordinance of Baltimore City authorizing the Board of Zoning Appeals to grant a permit, where otherwise excluded or limited by the ordinance. We held that such provisions were invalid, because they granted an undefined and unlimited discretion to an administrative agency. In the course of that opinion, Judge Parke, speaking for the court, said:

"Such a result is not consonant with the theory of the legislation, and clearly the statute, which declared that, while the regulations for the several districts might differ from one another, the regulations in each district must be uniform for each class or kind of building throughout the district, did not contemplate a change in the division lines between the districts except by the legislative body of the municipality, which was given the power to cure whatever proved to be unjust or unwise by a corrective change or modification in division lines affecting such a major property right as the use and enjoyment of land. Code (Supp. 1929), Art. 66B (Acts of 1927, Ch. 705)."

This court has, therefore, recognized the right of the Mayor and City Council of Baltimore to change, modify and correct any injustices found to exist under the original Zoning Ordinance.

In the earlier case of *Roach v. Board of Zoning Appeals*, 175 Md. 1, the validity of the amendment rezoning property from first to second commercial uses was not raised nor considered, but in *Montebello Land Co. v. Novak Realty Company*, 167 Md. 185, the amendment to the Zoning Ordinance lowered the restriction on property owned by appellant. We there held that the ordinance was within the scope of the powers conferred by the statute.

We have given careful consideration to all cases relied upon by appellants, but we do not find in any of them any pronouncements in conflict with the views herein

expressed. For instance in *Ford et al. v. City of Hutchinson* (Kan.), 37 Pac. 2nd, page 39, an amendatory ordinance was held void, because precedent requirements as to notice and public hearings had not been complied with. Again in *Phipps et al. v. City of Chicago* (Ill.), 171 N. E. 289, an effort was made to change from an industrial and commercial use classification to a residential use, imposing additional burdens and restrictions upon the property, a situation entirely opposite from that under consideration. Of course, in that case it is understandable that such legislation could be sustained only under the police power. And a reading of the decision in *Kennedy v. City of Evanston* (Ill.), 181 N. E. 312, discloses that in the amending ordinance there considered there was no problem of rezoning property from a higher to a lower classification.

Appellants have also suggested that the injunction should not have been dissolved, because of certain restrictive covenants upon some of the properties mentioned in Ordinance No. 110. While the testimony pertaining to them is fragmentary, there was evidence offered and admitted, subject to exception, that the lots at one time were embraced in a much larger tract of land shown on a plat as "Avondale." This land was once owned by William H. Linthicum, who conveyed certain parcels thereof to various persons and subsequently conveyed the remainder to the Linthicum Realty Company which sold the remaining lots. As nearly as we can determine from this testimony, the restrictions in the two classes of deeds were neither uniform nor identical, because in some of them the grantees undertook to agree with the grantor to observe the restrictions, while in others the conveyances were made subject to the restrictions. Twelve of the lots contained a provision that "no stables or other outbuildings shall be erected on the front of any lot, and no nuisance of any kind shall be maintained thereon." It is quite impossible, in view of the meager testimony, for us to determine that the restrictive

covenants contended for are now enforceable, or that they were adopted by the grantors in the furtherance of a general scheme of improvement to protect their other properties. It follows that the chancellor, who allowed appellants a wide latitude in introducing testimony pertaining to the alleged restrictions and admitted the same subject to exception, was correct in striking out the testimony referred to, not only because of its insufficiency to enable a determination of the issue sought to be introduced, but as well for the reason that the proceedings originated in an appeal from the Board of Zoning Appeals. It, therefore, only involved questions under the Zoning Ordinance, and it seems clear that the Baltimore City Court was without jurisdiction in that proceeding to consider appellants' claim in this respect which is of necessity based upon equitable relief, because of the covenants. Such private restrictions controlled by contract and real estate law are entirely independent of zoning and have no proper place in proceedings of this character, notwithstanding if in a proper proceeding the restrictions contended for are shown to be binding upon the properties mentioned, zoning cannot nullify them.

It follows that Ordinance No. 110 was within the powers delegated to the Mayor and City Council of Baltimore, and that the provisions of law relating to its enactment were complied with. This being true, the order appealed from which vacated the injunction must be affirmed.

*Order affirmed, with costs.*