GLEASON ᴇᴛ ᴀʟ. *v.* KESWICK IMPROVEMENT
ASSOCIATION, INC. ᴇᴛ ᴀʟ.

[No. 69, October Term, 1950.]

*Decided January 10, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Albert L. Sklar,* with whom was *Henry R. Wolfe* on the brief, for the appellants.

*O. Bowie Duckett* for the appellees.

GRASON, J., delivered the opinion of the Court.

The Board of Municipal and Zoning Appeals of Baltimore City granted the appellants, under Paragraph 12, section (c), (Ordinance No. 1247 approved by the Mayor

and City Council on March 30, 1931, and known as the Zoning Ordinance) the right to erect a store on their property situated in a residential use district. On appeal to the Baltimore City Court this action on the Zoning Appeals Board was reversed, and from that action by the court below the case comes here on appeal.

The action of the Appeals Board was not unanimous. One of the members of that Board dissented from its action. In the Resolution of the Board, dated October 20, 1949, certain statements therein and inferences drawn are not sustained by the testimony in this case.

Stated in narrative form, the evidence taken before the Board and in court is as follows: The property involved in this case is known as 220 W. Cold Spring Lane. It is situated on the north side of that street and is 125 feet and 1¾ inches east of Wilmslow Road. The lot fronts on Cold Spring Lane 75 feet 1 inch, and has a depth of 129 feet 7⅞ inches. It is improved by a dwelling 20 feet by 55 feet, and a shed. It is proposed to construct a one-story brick building 75 feet by 70 feet on the rear of the lot, to be used as a store, and to use the front part of the lot for parking.

This is the second application to the Board for permission to erect a store on this lot. The first application was disapproved by the Board on September 14, 1948. The house on this lot has been used as a dwelling for years and was probably so used long before Ordinance No. 1247 was approved by the Mayor and City Council. The appellants in this case purchased this property about 1944. At that time it was used for residential purposes, continued so to be used, and at the time of the application in this case was used as a residence.

Under the ordinance, five feet east of this property is the line which separates the residential zone from the second commercial zone. The residential zone is west of the line and the second commercial zone is east of the line. The first property east of the line is an office and warehouse, the second is a filling station, and the third is a storage yard upon which is a store. The

store is next to the Maryland and Pennsylvania Railroad tracks. To the north of the property in question is a 20 foot alley which runs from Wilmslow Road easterly to a shed on the property of the storage yard. The property of William N. Robey and Teresa Robey (two of the appellees) is the third house north of the twenty foot alley, fronting on Wilmslow Road, and is one of the very nice residences in that vicinity. Two blocks West of the appellant's property there is a shopping center. In that district there are two grocery stores, one of which is operated by the appellants. One witness said that this business section is three blocks from the property in question. In its Resolution the Board stated that Cold Spring Lane, from the railroad tracks to Schenley Road, is practically a business street. The testimony is that starting at 220 W. Cold Spring Lane (the property in question) and going west to Keswick Road, on the north side of Cold Spring Lane (a distance of practically two blocks) there are "ten plots. Nine of those plots are residence construction. One of them, the gas station, is a commercial structure. * * * Now, the south side of Cold Spring Lane is entirely residential. * * *." Mr. Buckler, a member of the City Council, testified: "All the properties across the street on the south side of Cold Spring Lane are individual fine residential properties * * *."

The record shows that on the north side of Cold Spring Lane, from the property in question west for practically two blocks, the neighborhood is residential, except two or three properties along that side are used for commercial purposes; and on the south side of Cold Spring Lane, from the property in question, there are "fine residential properties"; and within two blocks of the property in question there is a shopping center which includes two grocery stores, one of which is operated by the appellants. There has been little change in the neighborhood since the adoption of Ordinance No. 1247.

The application of the appellants seeks to rezone their property, not under the general rule provided by the Zoning Ordinance, but to apply to their property a special exception provided for by Par. 12 (c) of the Ordinance. Subsection (c) is as follows: "within one hundred feet of a boundary line between two use districts, any use permitted in that one of such use districts which has the lower classification, provided such one hundred foot measurement shall not extend across a street."

It may be noted that a special exception will never be granted to gratify a convenience, and not only must the necessity be urgent, but the facts in a given case must be so extraordinary as to persuade us to withdraw the case from application of the accepted rule. We have also held that Par. 12 of the Ordinance is to be strictly construed. The burden of proof is upon the applicant, and it must be shown that the hardship affects particular premises and is not common to other property in the neighborhood; the fact that variance would make property more profitable is not a sufficient ground to justify granting of variance. *Easter v. Mayor & City Council,* 195 Md. 395, 73 A. 2d 491; *Heath v. Mayor & City Council of Baltimore,* 190 Md. 478, 58 A. 2d 896, 898; *Cassel v. Mayor & City Council,* 195 Md. 348, 73 A. 2d 486. See *Mayor & City Council v. Byrd,* 191 Md. 632, 62 A. 2d 588.

"Where a person purchases property with the intention to apply to the board of appeals for a variance from the restrictions imposed by the ordinance he cannot contend that such restrictions cause him such a peculiar hardship that entitles him to the special privileges which he seeks." Rathkopf on Law of Zoning and Planning, page 262.

Before the appellants purchased this property it had been used for residential purposes and has, ever since, been used for such purposes. At the time of the application, within two blocks of this property there were two grocery stores, one of which was operated by the appellants. Since its purchase by the appellants they have allowed the residence to deteriorate, and the only

repairs made to the house were made by the tenants themselves. We think that a fair inference from the facts disclosed in this case is that the appellants bought this property with the view of changing its classification so as to permit them to erect a store on the lot. They claim that in view of the properties surrounding this lot, and that it is not fit for residential purposes, it would be a hardship not to grant them an exception to the general rule. To this contention we do not agree. We think it a fair inference that the appellants bought this property with the intention to change its classification so as to permit its use as a store, and they cannot claim now that they suffer a peculiar hardship that entitles them to the special privilege which they seek.

The appeals in *Sugar v. North Baltimore M. E. Church*, 164 Md. 487, 165 A. 703, were dismissed because the zoning ordinance at that time did not provide for an appeal to this court, nevertheless, the court, through Judge Parke, expressed an opinion in the case. That case involved an application to extend the divisional line between two use districts. It was there held that the change in location of the divisional line could only be made by an ordinance. 164 Md. at page 496, 165 A. at page 706, the court said:

"The possession of a power to ignore the boundary line between use districts in individual cases, and, within an interior bounding belt of one hundred feet, to grant a use there generally prohibited, would enable the board by repetition to reform the entire boundary line and enlarge the prescribed uses within the area of the belt at the request and for the separate benefit of individuals. Such a result is not consonant with the theory of the legislation, and clearly the statute, which declared that, while the regulations for the several districts might differ from one another, the regulations in each district must be uniform for each class or kind of building throughout this district, did not contemplate a change in the division lines between the districts except by the legislative body of the municipality, which was given

52

the power to cure whatever proved to be unjust or unwise by a corrective change or modification in division lines affecting such a major property right as the use and enjoyment of land."

The court commented: "No matter from what angle the problem is considered, the order of the Baltimore City Court would be affirmed, if this appeal should be entertained."

On the facts in this case we are of opinion that the order appealed from was correct and should be affirmed. In this case it is not necessary for us to determine the constitutional validity of Par. 12. For the purposes of this case we shall assume, without deciding, that Par. 12 (c) is constitutional and valid.

*Order affirmed, with costs.*