WAKEFIELD ET UX., ET AL. *v.* KRAFT ET UX., ET AL.

[No. 89, October Term, 1952.]

*Decided April 16, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles E. Hogg,* with whom was *Jerome A. Loughran* on the brief, for the appellants.

*Paul F. Due,* with whom was *Wilbur D. Preston, Jr.,* and *Due, Nickerson, Whiteford & Taylor,* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

We are called on to review the action of the Circuit Court for Howard County, invalidating the rezoning by the County Commissioners from Residential to Commercial A, of a tract of land at the intersection of Columbia Road and Montgomery Road. Marcus A. Wakefield, Jr. and his wife, the appellants, in June, 1946 acquired an unimproved rectangular eight-acre tract of land at this location. Before the appellants bought the land, there existed three commercial uses in the immediate neighborhood—a combination filling station, tavern and lunchroom on the northwest corner of the intersection, a dance hall, skating rink and restaurant about seven hundred feet south on the Old Columbia Pike, and on Montgomery Road to the north, a filling station.

About two years later, the General Assembly, by Chapter 19 of the Special Session of 1948, authorized the County Commissioners of Howard County to adopt a comprehensive plan of zoning and to enact rules, regulations and restrictions as to the erection and use of the land and buildings. On July 27 of that year, after months of study by an expert, and consideration of his recommendations, all of Howard County was zoned either Resi-

dential, Commercial A or Commercial B. The Wakefield property was zoned residential.

Between Ellicott City and the Wakefield property are eighty-five or ninety houses on the Columbia Pike. Almost all of the development along this highway to the intersection is residential. To the south are four dwellings constructed recently at substantial cost, the first of which adjoins the Wakefield property.

In 1949 the Wakefields sold the State four acres of their land and there has been erected on it an Armory; such use is permitted in a residential use area. The remaining part of the Wakefield tract comprises some 4.3 acres and runs about five hundred feet along Montgomery Road from the Armory lot boundary to the intersection, and then some four hundred twenty feet along Columbia Pike. This is the tract which occasions this case.

In February, 1952 the appellants petitioned the County Commissioners for reclassification of the lot. After following the statutory procedures set up by the Enabling Act, including hearings therein called for, the County Commissioners made the reclassification. It was not recommended by the Zoning Commissioner, who must make a recommendation when there is to be an amendment to the zoning law. It was opposed by some of the neighbors, although it was favored by others. Some of the protesting neighbors filed a bill in the Circuit Court of Howard County to enjoin the reclassification and amendment of the zoning maps, on the ground that the action of the County Commissioners was unconstitutional, invalid and void, in that it constituted spot zoning, was arbitrary, and not in the public interest but merely an accommodation to the property owners. The Court granted the injunction and this appeal followed.

The testimony showed that the Wakefields had entered into a contract to sell the land to the Parlett Motor Company, the contract being conditioned on successful completion of the rezoning.

In deciding the challenge to the action of the County Commissioners functioning as a municipal legislature, the Court must use rigorous self-discipline, as it must always in such cases, to avoid substituting its judgment or views as to the wisdom or soundness of the action taken for that of the Legislative body to whom such questions are confided exclusively under our governmental system of separation of powers, and only to decide whether the action is illegal, arbitrary or discriminatory.

The judicial charts which have been drawn, case by case, in zoning decisions reveal the reefs and shallows to be avoided in this respect and the channels to be followed to sound conclusions.

Where the legislative body of a municipality, under powers granted by the Legislature, has enacted a zoning ordinance, the Court's function in review is restricted and its scope is narrow. Such an ordinance, an exercise of the police power, enjoys a presumption in favor of its validity. One attacking it, to be successful, must show affirmatively and clearly that it is arbitrary, capricious, discriminatory or illegal. This presumption of reasonableness and constitutionality applies to rezoning as well as to original zoning, though not with as great force. This is so because it is presumed that the original zoning was well planned, and designed to be permanent; it must appear, therefore, that either there was a mistake in the original zoning or that the character of the neighborhood was changed to an extent which justifies the amendatory action. *N. W. Merchants Term. v. O'Rourke,* 191 Md. 171, 191, 60 A. 2d 743; *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387, and *Kinney v. City of Joliet,* 411 Ill. 289, 103 N. E. 2d 473.

The Court will not substitute its judgment for that of the legislative body if the question decided was fairly debatable. *Zahn v. Board of Public Works,* 274 U. S. 325, 71 L. Ed. 1074; *Anne Arundel Co. v. Ward,* 186 Md. 330, 46 A. 2d 684, 165 A. L. R. 816; *Anne Arundel Co. v. Snyder,* 186 Md. 342, 46 A. 2d 689; *Francis v. MacGill,*

196 Md. 77, 75 A. 2d 91, 94; and *Hoffman v. M. & C. C. of Baltimore,* 197 Md. 294, 79 A. 2d 367. It is not the function, duty or right of a Court to zone or rezone, but only to determine whether the legislative body has properly applied the governing law to the facts. If there is room for reasonable debate as to whether the facts justify the municipal legislature in deciding the need for its enactment, it must be upheld. It is only when there is no room for reasonable debate, or a record barren of supporting facts, that the Court can declare the legislative action arbitrary, capricious, discriminatory or an unequal application of the law.

In *Chayt v. Maryland Jockey Club,* 179 Md. 390, 18 A. 2d 856, 858, the Baltimore City Council amended the zoning ordinance to reclassify several lots of ground contiguous to the Pimlico Race Track from residential to first commercial. The neighbors urged the invalidity of the rezoning. The Court said that restrictions can be imposed on private property only when justified for the protection of the public health, morals, safety or welfare. The Court restricted the application of the rule, saying: "We have been cited no case applying this principle to a situation of rezoning from a higher to a lower class. In order to impose restrictions some valid exercise of the police power must be proven. But such power is invoked for the protection of the property restricted and not to give protection to the surrounding property. It is basic to the law of property that a man shall be allowed the widest use of his property consonant with the protection of his neighbors. In order to justify therefore a restriction of that use, it must be shown that such restriction is in some manner related to the police power of the sovereign." The substance of this quotation is repeated with approval in *N. W. Merchants Term. v. O'Rourke, supra.* The statement of the *Chayt* case that rezoning from a higher to a lower classification need not be based on a valid exercise of the police power is undoubtedly too broad and too general. See criticism of the case in *Page v. City of*

*Portland,* 178 Or. 632, (1946) 165 Pac. 2d 280, 285. Zoning is legislative action, passed in an effort to bring about the greatest good for the greatest number. Thus, when a legislative body in this collective, communal lawmaking restricts the use of property, those restricted are entitled to the reliance that all others similarly situated will be similarly restricted. A rezoning ordinance may not do violence to this principle. This is to say that such an ordinance must not be unreasonable or discriminatory, or deny equal protection of law. Such an ordinance must not amount to the granting of a special privilege. *Ellicott v. Mayor & City Council of Baltimore,* 180 Md. 176, 23 A. 2d 649; *Yokley, Zoning Law and Practice,* Sec. 86; *DeBlasis v. Bartell and Oliveto,* 143 Pa. Super. 485, 18 A. 2d 478. The Court in *Page v. City of Portland, supra,* [178 Or. 632, 165 P. 2d 283], said: "While the City Council has wide discretion in enacting zoning ordinances, it has no right or authority to place restrictions on one person's property and by mere favor remove such restrictions from another's property. There must be reasonable ground or basis for the discrimination." On the other hand, if there is public need for the change, in the opinion of the municipal legislature, and this opinion is based upon actual, though disputed, grounds, the legislative action will be sustained. The *Page* case continues after the quotation just above given: "Whether there has been such a substantial change of conditions in a use district as to warrant the enactment of an amendatory zoning ordinance is primarily a question for the Council to determine, and its action, in reference thereto, will not be reviewed by the courts if the question is fairly debatable. It is only when the legislation is clearly arbitrary and unreasonable that a court will interfere."

If there was a mistake in the original zoning ordinance, or if the character of the neighborhood has changed, so that an amending ordinance is otherwise permissible and proper, the fact that neighboring owners have built in reliance on the original zoning gives them

no vested right which will successfully support a complaint about the amendment. Passage of a zoning ordinance is legislation, not the entering into of a contract. A property owner has no vested right to the continuance of the zoning status of a neighboring area. *Yokley, Zoning Law and Practice,* work cited, Sec. 77; *Page v. City of Portland, supra; Chayt v. Maryland Jockey Club, supra; Reichelderfer v. Quinn,* 287 U. S. 315, 53 S. Ct. 177, 77 L. Ed. 331; *Eggebeen v. Sonnenburg,* 239 Wisc. 213, 1 N. W. 2d 84, 138 A. L. R. 495. He is entitled to rely on the rule that a classification made by ordinance will not be changed unless the change is required for the public good and is not made merely to accomodate private interests which are detrimental to the welfare of the other property owners of the same neighborhood. *Page v. City of Portland, supra; Kennedy v. City of Evanston,* 348 Ill. 426, 181 N. E. 312.

There were abundant facts before the County Commissioners of Howard County which would permit them, or their supporters, to debate on equal terms, at least, with any one challenging the propriety, the fairness, and the soundness of their conclusion that the zoning ordinance of the County should be amended to make the intersection of Columbia and Montgomery Roads Commercial A. These include:

(1) The plan of zoning adopted by Howard County in its original ordinance was what has been called "the natural, the early pattern of zoning"; that is, to make road intersections commercial zones as contrasted to the other main system, which is to develop entirely new commercial zones. According to one of the experts who testified in the case, Mr. C. William Brooks, each method has adherents. Howard County has used only the intersection method. There is but one industrial zone in the County and only some twelve Commercial A areas, and each of the latter is a relatively small area at a road intersection. This method of zoning, as part of a comprehensive plan, has met with judicial approval. See *Ellicott v. City of Baltimore, supra,* and *Cassel v.*

*M. & C. C. of Baltimore,* 195 Md. 348, 355-356, 73 A. 2d 486, 489, where it is said: "The courts have accordingly upheld the creation of small districts within a residential district for use of grocery stores, drug stores and barber shops, and even gasoline filling stations, for the accommodation and convenience of the residents of the residential district." See also *Marshall v. Salt Lake City,* 105 Utah 111, 141 Pac. 2d 704, 149 A. L. R. 282.

(2) At the time of the passage of the zoning ordinance in the County, it was known that the Columbia Road was to be relocated by the State Roads Commission. The testimony was, and it is conceded, that if the County Commissioners had then known its precise future location, they would have then zoned the intersection Commercial A rather than Residential. Indeed, Mr. Brooks testified that in his preliminary study in 1948, he had put in a commercial zone that ran down to and included the dance hall. He then said (referring to the Commissioners) : "we discussed it, and after discussing it, we felt that in as much as we were not sure of the location of the new 29, that we would omit the commercial zone suggested there and one other about midway down 29. Those were taken out, and were not included in the approved plan." Thus, so the appellants argue, it follows that the amended classification is really the supplying of a necessary but unwanted omission in the original zoning plan, and the effect is the same, in law and fact, as if the intersection had originally been zoned commercial. Compare *Chayt v. Maryland Jockey Club, supra,* [179 Md. 390, 18 A. 2d 858], where the Court noted that the main body of Pimlico was originally zoned commercial, while the contiguous lots immediately involved in the case were zoned residential, and by the amending ordinance were added to the general Pimlico classification. The Court then said: ". . . this being true we have the same result as if it had been originally classified as a first commercial use district".

(3) At the intersection are non-conforming business uses across the street from and adjacent to the land

to be rezoned. Immediately across Montgomery Road to the north is a filling station owned by a Mr. Rex. At the northwest corner of the intersection of Montgomery and Columbia Roads, is a combination filling station, tavern and lunchroom, and about seven hundred feet south of the intersection, there is a dance hall, skating rink and restaurant. Some two weeks before the application was made in the present case for rezoning, the Zoning Commissioner of Howard County, without objection, had extended the non-conforming use of the land of Mr. Rex so that it was contiguous to the Wakefield land. At the argument of the case, we were told, and the parties were in agreement on this, that if the action of the County Commissioners in rezoning the Wakefield property, was upheld that they would grant a pending application to rezone another corner, and thus make the intersection predominantly commercial.

(4) There has been a substantial change in the neighborhood since the original Zoning Act of Howard County was passed. Relocation of U. S. Route 29 has added new roads to the neighborhood; these have increased traffic, from 300% to 500%, according to estimates of neighbors, and to such an extent that the State Roads Commission plans to widen Montgomery Road to eighty feet. Traffic hazards, and unresidential traffic noises have increased correspondingly. Also, the State of Maryland, through its Military Department, has built the armory on part of the original Wakefield property, in which are stored tanks and trucks, the operation of which increases noise, confusion and dirt about the intersection.

(5) There is a definite need for a commercial area immediately south of Ellicott City. The owner of the property involved testified that it was zoned as residential and that he did not consider it suitable for that type of development. He has had no offers of purchase from residential buyers but he has had several from those who wished to use the land for commercial pur-

poses. Mr. Brooks, the zoning expert, testified that it was perfectly evident that some facilities would have to be provided in the neighborhood. He said that: "I travelled over hundreds of home sites, halfway built within a radius of, and this is a guess, a mile and a half of this location, the County Commissioners are going to be deluged with locations for some sort of shopping facilities for those people". Mr. Jean Convery, a neighbor, testified that the neighborhood was noisy because of the truck traffic and said: "I think that the property is more beneficial for commercial than it would be for residential. I personally don't think anybody would buy it to build a house on. * * * It's just continually a hubbub of noise. . . Another reason that I think it should be changed. Ellicott City, the City itself, is more or less dying right on its feet because they've taken this cut-off road, and it has thrown all the traffic to the dual highway, and Ellicott City is more or less by-passed. . . . I think eventually the business district of Ellicott City is going to move somewhere because it can't survive. . . I think the whole district up there should be declared commercial because I think that's the most convenient location in this vicinity for a commercial district". As to the condition that exists there now, he said on cross-examination: "These other people they live a good ways from the corner there. I mean I'm right there where all of it is going on. It's not much of a residential, I'll tell you that". There is no commercial district between Ellicott City and Highlands on Route 29, a distance of tweve miles, and none on the Columbia Pike between Ellicott City and Scaggsville, a distance of ten or twelve miles.

(6) Mr. Brooks, who had been employed by the County Commissioners of Howard County to prepare the original zoning map, testified for the Commissioners. He said that if the ideal could be attained the area should be zoned as a neighborhood shopping center to meet the demands of which he had spoken. His recommendation to the County Commissioners at the time of the original

zoning was for the promulgation of regulations which were more comprehensive and more refined than those which were adopted, namely, Residential, Commercial A, and Commercial B. He has been Chief Zoning Enforcement Officer for Baltimore City since 1926 and has recently been assigned by the Board of Estimates to the zoning study Commission to help rewrite the zoning law and maps of the City. He was asked his opinion about the amendment, and he replied: "The change to Commercial A under the existing regulations in my judgment is justified". He was asked on cross-examination, whether he had suggested the change, and he said he had not been consulted, but if they had asked him, "I would recommend it would be again a commercial district". He answered again on cross-examination: "If the pendulum is going to swing, it seems to me it will have to swing over to Commercial A if that is the only classification you have because of the position of this particular property. If the Armory had been there, if the gasoline station and the tavern on the other side, and the road as laid out now, had been there when we planned the original zoning, it would have probably been Commercial A, if they had accepted my recommendation".

(7) Mr. James Macgill, Zoning Commissioner of Howard County, in fulfilling his statutory duty, wrote to the County Commissioners in regard to the proposed change, in part, as follows: "This reclassification presents a very difficult problem, in my opinion. The parcel under consideration is surrounded by mixed residential and commercial or semi-commercial properties and the whole thing boils down to whether it is better to keep this land residential so as to protect the residential properties, or whether it is better to reclassify it so as to enable the applicants to make the maximum use of it. The fact that the Armory lies behind this parcel unquestionably, in my opinion, reduces its value for residential purposes. . . Balancing the equities, to use a

legal expression, I must recommend that the reclassification be denied for the reasons that I set forth".

Certainly, it can be said that the question whether to rezone the intersection—for that, it must be conceded, is essentially what the question comes down to because of the pending application for the other corner and the existing non-conforming uses—can at the least be said to be fairly debatable. The Zoning Commissioner says it amounts to the balancing of the equities. The zoning expert, Mr. Brooks, says that the pendulum must swing to Commercial A and that he would recommend that classification because of the need for a business center in that community. There is lay testimony to support this, based on reasons stated. There is the familiarity of the County Commissioners with the County and the neighborhood. Certainly, on the evidence before them, and the facts known to them, the County Commissioners as a legislative body honestly, soundly, and fairly conclude that the public need required the amendment to the zoning map. They recalled, undoubtedly, that it would have been done in 1948, if the relocation of the road then had been known. Thus, essentially, making the intersection Commercial A was part of an original comprehensive plan for uniform zoning of the whole County.

It is said that the use which is to be made of the property is not for a neighborhood shopping center nor for the establishment of stores, but for an automobile showroom and garage. The answer to that seems to be convincing on the facts and obvious as a matter of law. The Zoning Ordinance of Howard County, under its classification of Commercial A, permits such a use. What uses are to be included in a classification is a question for the legislative wisdom of the municipality, and is not subject to judicial review, unless obviously unreasonable or arbitrary. If the decision of the County Commissioners was that the area called for the status of Commercial A, any of the nineteen uses permitted under that classification had a rank and force equal to any other. The County Commissioners are not a Plan-

150

ning Board, nor have they a right to exact conditions, or promises of a particular use in return for deciding that the public interest justifies that an area should be zoned commercial. Furthermore, motor vehicle sales rooms, service garages, filling stations and accessory lots are customarily included in commercial use areas just below residential. *Yokley*, in the work cited, at Sec. 62, inserts a zoning ordinance he regards as a desirable model to follow. It includes six residence use classifications, the last being: "Residence E Districts". Then follows Commercial A, ahead of Commercial B and Industrial A and B successively. At page 102, there is listed as part of Commercial A uses: "Public garage. Motor vehicles sales room. Service garage. Filling station. . . Accessory uses customarily incident to a use authorized by this section. . ." Seemingly a refined and detailed zoning plan gives the use contemplated by Parlett Motor Company a social standing equal to that of a retail store or service establishment. Unless the witness' estimate of the need for a commercial area is far out of line, natural economic processes will bring the stores very soon. Which use comes first would not seem to matter. *Bassett, Zoning,* page 184, says: "The local legislative body is taking advantage of its superior position whenever it tries to force a property owner to enter into a contract in order to have a permit to which he is entitled, or before zoning regulations are made which are justified by well-settled principles".

This is not to decide, and we do not, whether an administrative official or board may, as a prerequisite to the granting of a variance, attach reasonable conditions. Many Courts have held that, within limits, this can be done. *Yokley*, work cited, Sec. 127.

The testimony was that the building proposed to be built would be an oblong about 100 feet long by about 65 or 75 feet wide, with a modern showroom and office in front and a repair garage in back. It would be landscaped with evergreens and shrubbery and would be in keeping with the neighborhood. A lot would be adjacent

to the building, where used cars would be reconditioned, after which they would be put in the showroom. The building would be set back from both roads with two driveways. It would occupy only a relatively small part of the lot. Mr. Parlett testified that they intend to "have an Engineering Company lay it out for Commercial A use to show us how it can be used to the best advantage. . . . We thought if the Engineering Company laid it out and showed us the proper place to put our building, so later we could put other store buildings on that lot, it would be to our advantage and the Community's too".

There was substantial evidence to sustain the County Commissioners; whether that evidence was to be relied on, what inferences were to be drawn from it, and whether those which the Commissioners drew were right or wrong, is of no proper concern to a Court.

*Decree reversed, with costs.*

SOBELOFF, C. J., delivered the following dissenting opinion, in which COLLINS, J., concurred.

While Judge Collins and I concur heartily in the prevailing opinion's admirable thesis on the limited powers of the judiciary in zoning controversies, and indeed would give it further emphasis, this case is in our judgment one that calls for judicial intervention not judicial passivity. Whether a used car center is permitted to be established at the location in question is of less moment than the standards of judging which we lay down for the guidance of the trial courts as well as zoning officials in future cases.

In reversing Judge Boylan's decree in this case there is danger that the Court will be understood as declaring itself powerless to scrutinize any change in classification, no matter how palpably unfounded in fact, provided only that the zoning authorities pay the necessary tribute to form. In one breath it is insisted that these authorities must prove a "public need" for the proposed

change and in the next it is added that if they utter the magic words "we find a public need" courts must refrain from inquiring, "need for what?" The decision declares in effect that even when the record plainly discloses that the zoning officials and the property owner intend not to meet the proven need but only to create in the rezoned area something for which no need has been shown or attempted to be shown, courts must look aside.

A judicial review so attenuated is wholly illusory. It were better if the courts openly confessed total impotence in zoning matters. We think, however, that giving full effect to the acknowledged limitations upon the scope of judicial review there is still the opportunity and the duty to look to substance and not merely to form.

If the challenged action were, in form and avowedly, a reclassification to permit an automobile salesroom and used car lot there would be no hesitancy in holding that public need, the essential basis of reclassification, has not been proved. However genuine may be the necessity of the Parlett Motor Co. that would not be a sufficient basis for the action. *Easter v. Mayor and City Council of Balto.*, 195 Md. 395, 73 A. 2d 491; *Gleason v. Keswick Improvement Ass'n,* 197 Md. 46, 78 A. 2d 164.

It is important to note that the testimony recited at length pertained exclusively to a neighborhood necessity center, not an automobile sales establishment and a used car lot. While the appellants seek reclassification of their property to a "Commercial A" zone by showing the need for such a necessity center, nevertheless their real object, abundantly established in this record, is to establish an automobile sales agency, used car lot and related facilities.

Quite justifiably neighbors fear that reclassification is the Trojan Horse which will, under cover of a classification grounded on other commercial needs, gain entrance for the automobile salesroom and used car lot

to the detriment of the neighborhood. The immediate practical effect to be anticipated from the proposed reclassification is the admission of one of the most objectionable uses allowable in a Commercial A area. This is expected to occupy an as yet undertermined portion of the 4.38 acres involved in the controversy. The remainder, if any, not used for this purpose, will indeed be potentially available, if Parlett is willing, for less objectionable and perhaps desirable uses that could serve the neighborhood, such as retail stores and service shops. As to the latter there is considerable vagueness.

While the resolution adopted by the County Commissioners declares that public need and convenience require a commercial district in this vicinity to serve a steadily growing community, their answer filed in court says it is not their duty to determine the need for any of the specific uses permitted in "Commercial A" districts.

This cavalier dismissal of what is supposed to be the central question—the need for a commercial district at this point—is hardly reassuring to the protesting neighbors who foresee, as a result of the reclassification, the inevitability of the automobile sales business and used car lot nearby. At the same time, while the claimed benefits from retail service stores serve the cause of appellants in their attempted reclassification, such stores may in fact never materialize. Nor does this treatment of the matter enhance confidence in the bare recital of the County Commissioners that need exists for a commercial district.

Except for the few enumerated non-conforming uses, the neighborhood is predominantly residential. Eighty-five to ninety new houses have been built in this neighborhood in the last several years. Some costing as much as $25,000 to $40,000 were built close to this intersection recently, in reliance on the residential classification. This growth in the number of residences along Columbia Road from Ellicott City to the Montgomery Road crossing emphasizes the residential character of

the neighborhood.

The appellants argue that the action of the County Commissioners is in effect merely the completion of a classification contemplated five years ago. It is highly significant, however, that only the Wakefield corner is being reclassified, not the opposite corners at the same intersection.

It is freely granted that courts are not to take issue with the legislative authority, *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613, and that a zoning classification is presumed to be reasonable. *N. W. Merchants Term. v. O'Rourke,* 191 Md. 171, 60 A. 2d 743. Understandably, when one classification presumably correct is sought to be displaced by another, the presumption of correctness as to the reclassification is somewhat weakened. *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387.

Subtle distinctions as to the force of presumptions are, however, of slight practical value. These neat formulations have a literary appeal but they often are too artificial and elusive for minds to apply them to concrete cases. What is really meant is that in every case the judge must look at the facts and if there is substantial basis for the action, he is not to oppose his judgment to that of the authorized officials. But the judge is not bound to accept as binding fact a declaration not based on proof.

No one can tell from the evidence and the findings what if anything the Commissioners intended to provide in the way of stores; and it is plain as can be that the Parletts are not planning to erect stores on the lot, but a salesroom and open air used car lot.

While we do not mean to insist that in all cases the precise store uses must be shown in advance—for this may be a difficult and in some circumstances an unreasonable requirement—something more should be shown than is disclosed by this record.

Mr. Parlett indicated that of the 4.38 acres some portion might at some future time be used for stores. The bulk of the lot is intended to be used for his auto-

mobile business, and perhaps for a gasoline station. He was at some pains in his testimony to deny an intention attributed to him to establish the filling station, but he avoided a commitent not to establish it. He made it clear that a used car lot will be established. The land not immediately needed for his business purposes may, he testified, be held for his future needs or, if he sees fit, some of it may be used for stores. Throughout the record there is a studious effort to avoid commitment on this point.

C. William Brooks, who had served as consultant to the County Commissioners of Howard County in the preparation and adoption of the zoning map in 1948, was called as a witness for the appellants to support the proposed rezoning, but he did not unqualifiedly approve the reclassification. He said that with new houses being erected in the general neighborhood some provision of retail stores would have to be made for neighborhood convenience. Neither he nor any one else uttered a word in support of any need for a used car lot, or even undertook to defend its location at the place in question. With commendable frankness he admitted that persons of normal sensibility would be "offended" by bringing into the neighborhood lights, advertising banners and noise (such as would likely attend an automobile salesroom and used car lot) and that if he were living nearby he would prefer not to have such surroundings as they would adversely affect him. "In fact", he said, "I wouldn't be there", but he declined to say on cross-examination that the proposed use by the Parletts would depreciate real estate values.

He criticised the zoning law of Howard County for not having a more refined system of land classification. In his opinion the property in question should not be either "Residential" or "Commercial A" which permits nineteen uses, but there should be some intermediate classification lower than "Residential" yet not permitting some of the uses authorized in "Commercial A". He

had, in fact, recommended to the County Commissioners in 1948 a more precise classification of areas but the Commissioners wanted to adopt as few classifications as possible. Hence, he said, Howard County has only three classifications, "Residential", "Commercial A", and "Commercial B".

A difficulty in this case is that Howard County has a rather primitive zoning law; the mesh in its zoning sieve is too coarse. Passing through the over-sized openings, along with neighborhood service stores to which there is comparatively little objection, is a variety of uses to which there is much reason to object.

Certainly the defect in the law was, according to their consultant, specifically pointed out to the Howard County Commissioners before its adoption. The people of Howard County may yet prefer an occasional untoward result rather than a more refined and exacting system of zoning classifications. Tighter restrictions are still looked upon with disfavor and suspicion in some communities which have turned to zoning only recently and most tentatively.

Good zoning is not unrelated to the general problem of achieving good government. It should be understood that if there is to be good zoning, that will effectively protect neighborhoods and justly resolve conflicting interests within the community, the people—including the press and all other communal forces—must see to it that sound legislation is put on the books and that proper administrators are put into office. For the courts there will still remain an important role, but the judiciary alone cannot accomplish the whole task.

While in this instance we differ with our colleagues in the application of these basic princples, we think it salutary that even in what may appear to be a routine zoning case they see fit to stress these fundamentals of our governmental system. The public often seems to think that courts can protect them against every blunder and unwise exercise of power by any official. The truth is that courts have a narrow scope in pre-

venting the intrusion of unwelcome and even harmful uses of land even if the authorities exercising a quasi-legislative function appear to the judges to be mistaken in their judgment. It is only in cases of arbitrary action, taken in excess of the police power or without factual foundation, that courts may interfere.

The division of government into three branches is elementary doctrine. We all accept the principle. Nothing in our history has stirred more heat than instances of alleged judicial legislation; yet when it is felt that the Legislature has not acted with wisdom, or that administrative officers have been inept, the temptation is strong to turn to the courts for relief. Courts, however, may not rewrite statutes.

With full awareness of the very proper limitations on the scope of judicial review, we do not think that a set of facts may be proved to establish a particular need, and on this basis a reclassification made, only to bring into being a use for which no need has been shown. Courts should not blind themselves to the realities and feel bound by what Mr. Justice Holmes, in another context, called "a mere form of words". Their function is not so mechanical.

It is conceded that once a commercial zone is created in the proper manner, it is no concern of courts what other and future uses may be made of the land if the zoning law allows such uses in such an area. Where, however, there is reason to believe that the basis for the classification is one thing and the use contemplated is an entirely different one for which no need has been shown, courts are not powerless. From beginning to end of the record one will search in vain for a single word in justification of a reclassification to allow an automobile business and used car lot. It is beside the point to answer that even if properly proven uses were made of this zone there might nevertheless be a diversion later to less desirable uses.

Zoning is a sharp instrument; it should be handled carefully and responsibly. It is an exercise of the police

power of the State and can be sustained only when the action taken has substantial relation to the public health, safety, morals or general welfare. The Court may not disregard the recitals in the County Commissioners' Resolution; neither should it shut its eyes to other facts which are undisputed.

In the instant case the location of an automobile sales business and used car lot, for a private and not a public benefit, appears from the entire record to be the only objective certain to be achieved by planting a "Commercial A" island in a residential neighborhood. We declare that under the crcumstances of this case the challenged action is an unreasonable exercise of power, in excess of the delegated authority, arbitrary and void.

We think the decree of the Circuit Court should be affirmed.