ERDMAN *v.* BOARD OF ZONING APPEALS
OF BALTIMORE COUNTY

[No. 96, October Term, 1956.]

290

*Decided February 13, 1957.*

The cause was argued before COLLINS, HENDERSON and PRESCOTT, JJ.

Submitted on brief by *Howard C. Bregel* and *Calvert R. Bregel* for appellants.

*W. Albert Menchine*, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order affirming the decision of the Board of Zoning Appeals of Baltimore County, (the Board), appellee.

Howard J. Schepf, Josephine Schepf, and George O. Blome filed before the Zoning Commissioner of Baltimore County, (the Commissioner), an application for a special permit for a gasoline service station on the major portion of four lots located on the southwest corner of Regester Avenue and Loch Hill Road in Baltimore County. These lots front 58.62 feet on Loch Hill Road and 160.07 feet on Regester Avenue. They were zoned commercial and constituted the only commercial area in an otherwise residential district. The Commissioner denied the special permit. An appeal was noted to the Board on July 30, 1955. The Board found that the granting of the special permit would not be detrimental to the health, safety, morals, and the general welfare of the community and reversed the order of the Commissioner. It granted the special excep-

tion "subject, however to the approval of a plan for the development of said property by the Baltimore County Planning Board and the Department of Public Works of Baltimore County". On the petition of the appellants a writ of certiorari was granted to the Circuit Court for Baltimore County. The trial judge, after reviewing the testimony taken before the Board and further testimony in open court, found that the granting of the special exception was supported by substantial evidence and was not arbitrary, discriminatory or illegal, and by order affirmed the action of the Board. From that order the appellants appeal here.

Under the zoning regulations and restrictions for Baltimore County, effective January 2, 1945, Section VII, it is provided that except as expressly provided in subsequent sections any building or land in a commercial zone may be used for any use except certain designated uses, among which is included "Gasoline Service (Filling) Station". Section XIII states that the inherent character of certain uses required that they not be carried on in districts or areas to which they do not conform, nor should such uses have the tendency to impair the health, safety, and morals of the public, and such uses may be permitted only upon a special permit. Sub-section E provides that in a commercial zone a special permit shall be required for a gasoline service station. See also Chapter 915, Acts of 1947, Laws of Maryland, Code of Public Local Laws of Baltimore County, Title 23, Section 367. It is also provided in Section XIII that before any special permit will be granted the use will not "(a) Be detrimental to the safety, health, morals and general welfare of the community involved. (b) Tend to create congestion in roads, streets and alleys in the area involved. (c) Create a hazard from fire, panic or other dangers. (d) Tend to overcrowd land and cause undue concentration of population. (e) Interfere improperly with adequate provisions for schools, parks, water sewerage, transportation and other public requirements, conveniences and improvements. (f) Interfere with adequate light and air."

Appearing in opposition to the granting of the special exception before the Board were residents of the development, some of whom testified that they would not have purchased

their homes if they had known there would be a filling station at that corner and that, in their opinion, the filling station would create an additional traffic hazard. They also opposed the construction of the filling station because they said it would create glare into the windows of their homes, noise, smell, dust and an increased fire hazard, and would depreciate the value of their property. They had moved to the neighborhood to get away from the noise, dirt, fumes and congestion of the city. Every morning children got on the buses at Loch Hill Road which at that time had a limited amount of traffic, and the filling station would increase the traffic on Loch Hill Road. Testimony was also taken in open court where Miss Gertrude Erdman, one of the protestants who apparently lived on a corner opposite the subject property, stated that she observed the number of school children and school buses at the intersection in the area of her home and that the buses loaded right at the intersection. When asked whether she was familiar with the fact that for years school buses had been stopping at another filling station in the Towson area, she replied that she did not know definitely whether such was the case or not. She thought the traffic hazard would be increased by the erection of the filling station.

Mr. George O. Blome testified before the Board that surrounding the four lots zoned commercial was a fully developed residential area. A shopping center was originally planned for those four lots. Each contract of sale of residential property included the restriction that those four lots of the development had been reserved for commercial purposes. Commercial zoning had been applied to the subject property for more than twelve years. The owners now desire to build on those four lots a filling station and five stores. No mention was made of the filling station at the time the residential lots were sold.

Mr. Bernard Willemain, testifying before the Board for the appellee, stated that he was a consulting planner, held a master's degree from the Massachusetts Institute of Technology, and had worked for five and one-half years as principal planner for Baltimore County. He had made a survey of the subject property and in his opinion it was a typical small neighborhood community site. The neighborhood was fully

developed except for the subject property and two or three lots which he assumed would be residential. The topography was ideal. The location in his opinion was a typical site for a neighborhood filling station. He thought the site perfectly satisfactory and almost a standardized type of location. The established building line would be zero feet from the property line from either one of the streets. The proposed layout of the Texas Company moved the position of the building at the farthest point away from both roads backing its building against the sides of the stores. He thought it would be better to use part of the lots for a filling station rather than for the construction of the authorized commercial use. From a traffic standpoint the filling station would be better than a commercial building located on the property line.

Mr. John E. Kane, real estate agent for the Texas Company, testified that his company had entered into agreements with the appellees to build a filling station on the four lots, subject to the granting of the special exception. If the application is approved the company intends to build a cinder block building, "2 or 3 bay, 22′ x 48′ x 14′ and covered with porcelain enamel, tile floors and so forth", with three underground gasoline tanks. The station would be strictly a neighborhood one opposite a highway location. There were no other filling stations in the immediate vicinity, the nearest one being 1.7 miles by road. To be economically sound the station should cater to a minimum of one hundred automobiles a day. The terrain was level and in his opinion the construction of the station would not operate to produce traffic on the non-arterial highway. Lights would be arranged to shade and throw the light on its own property. A service station erected on modern lines next to homes does not increase the fire insurance premiums on the homes. Sewerage was an engineering matter. It could not do fender work or any repair work which would make excessive noise.

Mr. Walter N. Ewell, a graduate of Johns Hopkins University and a former assistant professor of its school of engineering, and at that time in private practice as a consulting engineer, testified before the Board that he made an inspec-

tion of the neighborhood and the station would be seen at a distance of 1,250 feet on Regester Avenue heading east and traveling on Regester Avenue headed west the site would be seen for approximately 875 feet on Loch Hill Road. Traveling on Loch Hill Road the station would be visible at a distance of 750 feet. This more than complied with the sight distances proposed by the American Association of State Highway Officials. The maximum speed posted was thirty miles per hour. He made a traffic count at peak hours and in his opinion, if the site were developed commercially and a building erected to the property line on the corner, travelers were likely to park on that corner unless restricted. There would be less tendency for congestion of traffic at that corner with a filling station than with a commercial development. If a building were erected with a ten foot set back it would cause greater obstruction at sight distance than the station with the proposed 65 foot set back. With respect to the school buses discharging passengers at that corner, he thought there would be a greater concentration of traffic into a commercial development than into a filling station.

Of course, it has been stated many times by this Court that the Courts will not substitute their judgment for that of the Board, the legislative body, if the question decided was fairly debatable. It is not the function or right of the Courts to zone or rezone but only to determine whether the legislative body has properly applied the governing law to the facts. If there is room for reasonable debate as to whether the facts justify the action of the Board, such action must be upheld. It is only where there is no room for a reasonable debate or the record is barren of supporting facts that the Courts can declare the legislative action of the Board arbitrary, capricious, discriminatory or an unequal application of the law. If there are substantial facts to justify the action of the Board the Courts must affirm that action. The review by the Courts is very narrow in scope and even though the Courts may not feel the decision of the Board was the best that could be rendered under the circumstances, nevertheless the Courts will not set aside the Board's view of the matter if there is substantial evidence to justify its findings and its action is not arbitrary,

capricious or discriminatory. *Wakefield v. Kraft,* 202 Md. 136, 141, 142, 96 A. 2d 27, and cases there cited.

It was said in *Temmink v. Board of Zoning Appeals of Baltimore County,* 205 Md. 489, 495, 109 A. 2d 85: "Generally, therefore, there is no inherent objection to the creation of small districts within a residential zone for the operation of such establishments as grocery stores, drug stores, barber shops, and even gasoline stations, for the accommodation and convenience of the residents of the residential zone." It was said in *Benner v. Tribbitt,* 190 Md. 6, 19, 57 A. 2d 346: "A filling station need not be a universal blessing or a 'public necessity'. It is a lawful private business, not the exercise of a franchise. It is sufficient if it will not adversely affect the general welfare, safety, health, morals or comfort."

The granting of the petition here does not require a zoning reclassification. As to special permits, it was said in *Oursler v. Board of Zoning Appeals,* 204 Md. 397, 401, 402, 104 A. 2d 568: "The statutory authorization to the County Commissioners to empower the Zoning Commissioner to issue special permits for restaurants and other commercial uses in residential zones, where they are in harmony with the general purposes and intent of the Zoning Regulations, is a valid delegation of legislative power. *Montgomery County v. Merlands Club,* 202 Md. 279, 96 A. 2d 261. It is the function of the Zoning Commissioner, and the Board of Zoning Appeals on appeal, to determine whether or not any proposed use for which a special permit is sought would be in harmony with the general purposes and intent of the Zoning Regulations, and whether it could be conducted without being detrimental to the welfare of the neighborhood. Accordingly, in Baltimore County, where restaurants are *prima facie* permissible in residential zones, an applicant for a permit to conduct a restaurant in a residential zone is not required to show that denial of a permit would result in 'practical difficulty, or unnecessary or unreasonable hardship,' as in the case of a variance, but must show only that the exception would be in harmony with the zoning plan and would not be detrimental to the welfare of the neighborhood. A special permit issued by the Zoning Commissioner will not be rescinded by the Court if the

use is permitted by the Zoning Regulations, and the Commissioner did not act unlawfully or arbitrarily."

There appears here ample evidence from which the Board could find that the special permit would not offend any of the above quoted requirements for a special permit for a filling station. We cannot say from the evidence offered that its action was arbitrary, capricious, discriminatory or illegal. The order must therefore be affirmed.

*Order affirmed, with costs.*