CLELAND, Trustee, et al. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE et al.

[No. 30, October Term, 1951.]

*Decided November 2, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, and HENDERSON, JJ.

*Norman C. Melvin, Jr.,* and *Douglas H. Gordon* for appellants.

*J. Cookman Boyd, Jr.,* with whom was *F. Murray Benson* on the brief, for the applicants, appellees.

*Francis J. Valle, Assistant City Solicitor of Baltimore City,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the Mayor and City Council of Baltimore, appellees.

MARBURY, C. J., delivered the opinion of the Court.

Three practising physicians and their wives, co-owners of 4-6 East Madison Street, applied for a permit to establish a parking lot on their property to be used for parking cars belonging to the doctors and members of their staff who were using the doctors' offices at 4 East Madison Street. 4-6 East Madison Street is practically one lot, although it has two numbers. It is located in a residence zone, although there is a pre-existing non-conforming use of 4 East Madison Street, which has been used as doctors' offices since 1919. There is no building on that part of the lot known as 6 East Madison Street, except a garage which holds three automobiles. The building inspection engineer necessarily declined to grant the permit, and an appeal was taken to the Board of Municipal and Zoning Appeals, where the application was approved. An appeal was taken to the Baltimore City Court by the appellants, residents and taxpayers of the city, and owners of real estate near the property. The Baltimore City Court affirmed the action of the Board, and from its order the appeal comes here.

The order appealed from not only authorizes the use of the rear of 6 East Madison Street as a parking lot for the doctors and their employees, but also authorizes an entrance and exit to and from the rear of said property by a roadway on or over the sidewalk and front portion of the lot which is on East Madison Street. The property to the west adjoining the lot of the applicants is zoned first commercial, with the exception of the University Club property which is at the corner of

Madison and Charles Streets, and is zoned residential.

The Board of Municipal and Zoning Appeals attempted to act under the provisions of Paragraphs 12 (b) and (c) of the zoning ordinance*. (b) permits the Board to grant a use of the same classification, necessary or incidental to a non-conforming use now existing in a residential use district, within 50 feet from such non-conforming use. (c) permits the Board to grant within 100 feet of a boundary line between two use districts, any use permitted in that one of such use districts which has a lower classification. Appellants contend that the right to act under these provisions is taken away by the passage of Ordinance 1312, approved July 5, 1950. This ordinance adds Paragraph 14 (a) to the zoning ordinance, and gives the Mayor and City Council authority to provide by ordinance, upon conditions, for the establishment, maintenance and regulation of open areas in a residential use district, for the parking thereon of automobiles. We are unable to agree with appellant's contention in this respect, as we do not think this ordinance impliedly repeals Paragraphs 12 (b) and 12 (c).

In their attack upon the action of the Board, the appellants contend that there was no admissible evidence before the Board. The basis for this is that counsel for the applicants made an unsworn statement of the situation, and then two of the doctors were called, who adopted counsel's statement. The doctors were, however, subject to cross-examination under these circumstances on any statements made by counsel, and, while this method of procedure is not to be commended as a general proposition, it was probably allowed in this case as a means of saving time, and we cannot say that there was not evidence of the facts before the Board when it acted. Assuming, therefore, that the statement of counsel became evidence after its adoption by the doctors, we find that the basis for the application is that these physicians are active orthopedic surgeons, and the pressure of parking space has become intolerable because they have to get to their place of business and get

---

* Reporter's Note: Baltimore City Ordinances (1930-1931)—No. 1247.

away when needed, are frequently called on emergencies, and, if they do not have access to their own cars, delay ensues. The entrance to the garage is through adjacent property and through an alley which, however, has of late years become blocked by trucks of commercial enterprises which border on it. The space in the garage is such that if three cars are there, and the first one in wants to get out, a difficult and awkward situation ensues. The proposal was to breach the wall along Madison Street, put in an ornamental iron gate and a ten-foot driveway which would lead to the back of the lot and the rear of the building on lot No. 4. Sometimes the applicants would want an ambulance to run in, but they primarily want the use of the parking space for the cars of nurses and other employees who work in the building on No. 4.

Under Paragraph 12(b), the use to be granted must be necessary or incidental to a non-conforming use already existing. The non-conforming use was that of maintaining doctors' offices. There is nothing to show that it is necessary or incidental to such offices to have parking areas adjacent to them. It would no doubt be a great convenience to the applicants to have their cars, and the cars of their employees, parked in the rear of their offices, but this is neither usual nor necessary. Many physicians have offices in office buildings in the downtown sections of the city, and it is not necessary for them to have parking facilities on the same lot on which they practice their profession. This court has consistently held that special exceptions will never be granted to gratify mere convenience, that there must be a necessity, and that necessity must be so urgent, and the facts so extraordinary as to require the withdrawal of that particular case from the application of the accepted rule. That accepted rule is the division made in the zoning ordinance for various classes of use districts. It is part of a general plan which is not intended to be changed except in cases of urgent necessity. "It is evident that the spirit of the Baltimore City Zoning Ordinance is against the extension of non-conforming uses. It is

generally accepted that a few non-conforming buildings and uses, allowed to continue as exceptions to the regulations in order to avoid injustice, will not be a substantial injury to the community if they are not allowed to multiply where they are harmful or improper; but nonconforming uses should not be perpetuated any longer than necessary, and the Zoning Board should make constant efforts to move them into the use districts where they properly belong." *Colati v. Jirout,* 186 Md. 652, 657, 47 A. 2d 613, 615. See also *Mayor & City Council of Baltimore v. Byrd,* 191 Md. 632, 638, 62 A. 2d 588. *Heath v. Mayor & City Council of Baltimore,* 190 Md. 478, 483-484, 58 A. 2d 896. The same general rule applies to the exception to be permitted under Paragraph 12(c) within 100 feet of a boundry line between two use districts. We had such a situation in the recent case of *Gleason v. Keswick Improvement Association,* 197 Md. 46, 78 A. 2d 164, where we ruled against the exception. Cf. *Hoffman v. Mayor & City Council,* 197 Md. 294, 79 A. 2d 367.

The trial court relied upon the case of *Akers v. Mayor & City Council of Baltimore,* 179 Md. 448, 20 A. 2d 181, for the statement that occupants of certain houses are not prohibited from parking cars in their yards. That, however, is quite different from the present application. What is desired here is not to permit the doctors to park their cars in the rear of their residences where they also maintain offices. It is to provide a general parking space for not only their cars in the rear of their offices, but also the cars of all their employees who work in the building. We are unable to find any case in which this court has held that that is a permissible use.

In the instant case, we find no such compelling necessity as to justify the Board of Municipal and Zoning Appeals in granting an extension of the non-conforming use, or in utilizing the provisions of Section 12(c). It was not intended by the zoning act that whenever it was convenient or desirable for an individual owner to have a special exception, he should be allowed it by

the Board. Exceptions are not a matter of right, and where it appears, as it does in this case, that nothing will be served but the convenience of the doctors and their employees, we do not think such a case, based upon convenience alone, would justify the Board in granting an exception. Such action, if based upon insufficient reasons, is arbitrary and is in violation of the zoning law, and it cannot stand.

For these reasons, the action of the trial court will be reversed and the case remanded in order that that court may pass an order reversing the action of the Board of Municipal and Zoning Appeals and directing the dismissal of the petition.

> *Order reversed with costs and case remanded.*