**Robert F. BISER, Plaintiff–Appellant,**

v.

**TOWN OF BEL AIR; Carol Deibel; Edsel A. Docken, Sr.; James M. Decker; John E. Yantz; Donald Young; D. David Ranney, Jr., Defendants–Appellees.**

**Robert F. Biser, Plaintiff–Appellee,**

v.

**Town of Bel Air; Carol Deibel; Edsel A. Docken, Sr.; James M. Decker; John E. Yantz; Donald Young; D. David Ranney, Jr., Defendants–Appellants.**

**Nos. 92–1675, 92–1732.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1993.

Decided April 2, 1993.

W. Michel Pierson, Pierson, Pierson & Nolan, Baltimore, MD, argued for appellant.

Carol Brenick O'Keeffe, argued (Robert H. Levan, on brief) Levan, Schimel, Belman & Abramson, P.A., Columbia, MD, for appellees.

Before WILKINSON and WILKINS, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

This case arises from a local zoning dispute in Bel Air, Maryland. Appellant Robert Biser claims that the Town of Bel Air deprived him of substantive due process when it denied him a "special exception" that would have permitted him to construct two commercial office buildings in an area zoned for residential use. The Circuit Court for Harford County, Maryland held that the Town was equitably estopped from denying Biser his special exception, which that court ordered the Town to grant. After completing his office buildings, Biser filed this suit under 42 U.S.C. § 1983, claiming $1 million in damages from the Town's delay in granting the special exception. The district court dismissed the complaint for failure to state a claim. 778 F.Supp. 249. We believe that neither the relevant zoning laws nor the ruling of the Circuit Court of Harford County was sufficient to confer a cognizable property interest upon Biser. We thus agree with the district court that this local land use dispute does not belong in federal court.

### I.

The complaint alleges these facts. Robert Biser owns a tract of real property located at the corner of Vale Road and Rockspring Avenue in the Town of Bel Air, Maryland. That area has been zoned "R–2" (General Residence), restricting buildings in that area to residential use.

Local ordinances provide for commercial office use in residential areas under certain conditions, if the local Board of Appeals approves a special exception.[1] Maryland

---

1. The local ordinance provides, subject to the approval of the Board of Appeals, for conversion of a dwelling or part thereof into the office or studio of one or more physicians, surgeons, dentists, musicians, artists, lawyers, architects, engineers, teachers, insurance agents, real estate agents, photographers, accountants or other professionals; provided that the exterior residential appearance of the building be retained, that no floodlight-

ing shall be used and adequate off-street parking areas shall be provided to accommodate all personnel and patrons. The Board of Appeals may impose further conditions pursuant to Section 16.0443 of this Ordinance in order to protect the neighborhood, adjacent properties and community.
Town of Bel Air Zoning Ordinance No. 208, art. 7.06.

law authorizes the Board of Appeals to decide appeals from decisions by administrative officials as well as to grant special exceptions from certain ordinances. Md. Ann.Code art. 66B, § 4.07(d).

In August 1988, Biser contacted Carol Deibel, Director of Planning and Community Development in Bel Air. He sought her assistance in obtaining a special exception from the residential zoning restrictions. Deibel reviewed Biser's preliminary plans for two office buildings and informed him that his plans required setback variances. Deibel suggested that Biser apply for the setback variances, obtain building permits, construct the buildings, and then request the special exception. Deibel informed Biser that the buildings would have to be built before they could be approved for a special exception.

Biser presented his plans at a meeting of the Board of Appeals on September 27, 1988. He informed the Board of his development plans and his desire to ascertain whether there were any impediments to those plans. The Board expressed no objections to Biser's plans and approved the setback variances.

Biser then submitted his completed building plans with his applications for building permits to the Town's Assistant Planner. The building permits were approved on June 27, 1989, but only after the references to "commercial office buildings" in the applications were struck out and replaced with "dwellings."

After construction had begun, Biser sought approval in August 1989 for his storm water management plans. Town employees informed him that the storm water management plans could not be approved until the Board granted a special exception. Biser again contacted Deibel to ascertain what would be required to secure a special exception. Deibel informed Biser that he could apply for a special exception as long as the buildings were "under roof" and their windows had been installed. Biser completed this construction and applied for a special exception at the Board's meeting on September 26, 1989. The Board did not issue a decision at this meeting.

Two days later, the Town's Superintendent of Public Works issued a "stop-work" order. The order stated that the buildings did not comply with the Building Code's requirements for single family dwellings. Biser protested this order without success. In order to avoid further delays, he installed the kitchen and bathroom facilities necessary to comply with the order. The order was lifted on October 16, 1989.

The Board met again on October 24, 1989 to consider Biser's application for a special exception, which the Board denied. Biser appealed the denial to the Circuit Court for Harford County. The Circuit Court found that the ordinance authorizing special exceptions was ambiguous as to whether use and occupancy permits must be presented before the special exception for conversion of a dwelling to office use could be granted. That court further found that Biser had relied to his detriment on the Town's approval of his building permits, and went on to hold that the Town was equitably estopped from denying Biser his special exception. The Circuit Court remanded to the Board with instructions to grant the special exception. The Town complied with that order forthwith.

After some further delay in the permitting process, Biser completed his office buildings. He then filed this suit under 42 U.S.C. § 1983, claiming that he had been denied due process by the Town's delay in granting his special exception. Biser also made two state law claims based on the same facts. The district court dismissed with prejudice the federal count for failure to state a claim, and declined to exercise pendent jurisdiction over the state claims, which the court dismissed without prejudice. Biser appeals from the complaint's dismissal. The Town cross-appeals, contending that the state claims should have been dismissed with prejudice.

## II.

In order for Biser to state a substantive due process claim, he must first demonstrate that he possesses a "cognizable property interest, rooted in state law,"

in the lost benefit. *See Scott v. Greenville County,* 716 F.2d 1409, 1418 (4th Cir.1983). We do not believe that Biser held a property interest in the special exception before it was granted by the Board. A property interest requires more than a "unilateral expectation" that a permit or license will be issued; instead, there must be a "legitimate claim of entitlement." *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In applying this standard of entitlement, we have held that if a local agency has "[a]ny significant discretion" in determining whether a permit should issue, then a claimant has no legitimate entitlement and, hence, no cognizable property interest. *Gardner v. Baltimore Mayor & City Council,* 969 F.2d 63, 68 (4th Cir.1992).

Here the Board of Appeals had significant discretion in deciding whether to grant Biser's application for a special exception. In making its decision, the Board had to determine whether granting the exception "would adversely affect the public health, safety, security, morals or general welfare, or would result in dangerous traffic conditions or would jeopardize the lives or property of people living in the neighborhood." Town of Bel Air Zoning Ordinance, No. 208 art. 16.042. It is difficult to imagine a more flexible standard. Moreover, the ordinance requires the Board to consider eighteen separate factors in making this determination. *Id. See also Heath v. Mayor and City Council of Baltimore,* 187 Md. 296, 49 A.2d 799, 803 (1946) (noting discretion of local Boards of Appeals in granting special exceptions). In every respect then, the Board of Appeals possessed significant discretion under *Gardner* in deciding whether to grant special exceptions. Biser had only a unilateral expectation that he would receive the special exception. He possessed no legitimate claim of entitlement, and thus no property right cognizable under the due process clause. The fact that Biser believes that the Board acted arbitrarily on his application does nothing to change the fact that he was not deprived of any entitlement or right.

### III.

Biser contends, however, that the Circuit Court of Harford County created a state-law property interest when it held that the Board of Appeals was equitably estopped from denying him the special exception.

■■■ We disagree. Under Maryland law, equitable estoppel of a municipal corporation requires (1) an official act taken within the scope of authority; (2) an ambiguous statute or ordinance; and (3) detrimental reliance by a third party. *See Permanent Fin. Corp. v. Montgomery County,* 308 Md. 239, 518 A.2d 123, 127–29 (1986). Equitable estoppel prevents "a defendant from relying upon a right of property, of contract or of remedy both at law or in equity." *Kline v. Lightman,* 243 Md. 460, 221 A.2d 675, 684 (1966). Here the Board was estopped from asserting its legal right to deny the special exception. Estoppel does not, however, give rise to any affirmative duties. *Leonard v. Sav-A-Stop Services, Inc.,* 289 Md. 204, 424 A.2d 336, 339–40 (1981).

■■■ A subsequent order by a court of equity estopping a municipality from relying on its legal right does not represent a legitimate claim of entitlement. In order to justify substantive due process protection, the legal right to a permit must exist *before* the local agency denies the permit application—the claim of entitlement must come from "an *existing* legislative or administrative standard." *Dean Tarry Corp v. Friedlander,* 826 F.2d 210, 213 (2d Cir. 1987) (emphasis added). Equitable estoppel does not recognize a pre-existing legal right; rather, estoppel bars a defendant from asserting a legal right that it would otherwise be entitled to enforce, based on that party's conduct. *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 129 A.2d 93, 101 (1957) ("Equitable estoppel operates to prevent a party from asserting his rights under a general technical rule of law, when that party has so conducted himself that it would be contrary to equity and good con-

science to allow him to do so."). Arbitrary conduct standing alone does not create a legitimate claim of entitlement, even if it later leads to a state court judgment. *See Gardner*, 969 F.2d at 71 n. 3. Thus, the fact that Biser obtained a state court order, enforceable by that court's power of contempt, barring the Board of Appeals from denying his application for a special exception, does not mean that he had a preexisting legal right to that special exception.[2]

 Moreover, an equitable doctrine premised on statutory ambiguity does not rise to the level of "either a certainty or a very strong likelihood that the application would have been granted," which is necessary to state a legitimate claim of entitlement. *See Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir.1985). Far from being a general rule of law whose application can be predicted, estoppel derives from a court of equity's duty to do justice, and it necessarily "depends upon the facts and circumstances in each case." *Liberty Mut. Ins. Co. v. American Auto. Ins. Co.*, 220 Md. 497, 154 A.2d 826, 828 (1959). Biser could not have anticipated at the time of his application for a special exception that a court of equity would later preclude the Board from asserting its legal right to deny that application. The equitable doctrine of estoppel thus did not give Biser a basis for believing that there was a "very strong likelihood" that his application would be granted.

### IV.

 Finally, we note that Biser asserted state claims based on these same facts, for which he claims the same damages. Those claims were dismissed without prejudice, and Biser remains free to pursue them in state court. The Town of Bel Air has cross-appealed, claiming that the district court erred in dismissing Biser's state law claims without prejudice. We find no abuse of discretion here. In fact, the district court's order of dismissal properly left a local controversy for local resolution. The Circuit Court for Harford County has already given Biser relief once, and we see no reason why the Maryland courts are now inadequate to hear his current grievances. As we emphasized in *Gardner*, the proper forum for local land-use disputes is state, not federal, court. 969 F.2d at 69.

For the above reasons, the judgment of the district court is

*AFFIRMED.*

---

**2.** To the extent that *Roy v. City of Augusta, Maine*, 712 F.2d 1517, 1522 (1st Cir.1983), implies otherwise, we respectfully disagree. A state court judgment is something to be enforced through the state's judicial process, including its powers of contempt. Every state court judgment does not provide a would-be plaintiff with a cognizable property right under 42 U.S.C. § 1983, and every alleged delay in the enforcement of the mandate does not provide a plaintiff with a claim of deprivation without due process of law. To hold otherwise would assign the federal courts the role of ombudsmen in monitoring the execution of state judgments, a role Congress surely did not envision in passing this statute, and one that would be destructive of federal-state relations.