SYLVIA DEVELOPMENT CORPORA-
TION and Karel Dohnal, individually
and as agent for Sylvia Development
Corporation, Plaintiffs,

v.

CALVERT COUNTY, MARYLAND,
et al., Defendants.

No. PJM 92–2260.

United States District Court,
D. Maryland.

Jan. 13, 1994.

Tracey E. Mulligan, Rockville, MD, for
plaintiffs.

Charles B. Keenan, Jr., and Claire F.
Blomquist, Bel Air, MD, for defendants.

## OPINION

MESSITTE, District Judge.

Plaintiff SYLVIA DEVELOPMENT COR-
PORATION, a Maryland corporation, and
KAREL DOHNAL, a principal of the Corpo-
ration, sue Calvert County, as well as certain
current and past members of the Board of
County Commissioners, in a Complaint pro-
ceeding in three Counts:

I. Denial of equal protection of the law,
under 42 U.S.C. § 1983;

II. Conspiracy to deny equal protection
of the law, under 42 U.S.C. § 1985(3); and

III. Denial of due process of law, under
42 U.S.C. § 1983.

Defendants have denied liability and move
for summary judgment.[1]

After extensive discovery, the Court finds
no evidence from which a reasonable trier of
fact could conclude that Defendants engaged
in the purposeful discrimination requisite to a
finding of denial of equal protection. Nei-
ther is there evidence from which it could be
inferred that Defendants in any sense con-
spired to deny Plaintiffs such equal protec-
tion. Finally Plaintiffs lacked a legitimate

1. Plaintiffs have filed their own Motion for Par-
tial Summary Judgment which, in light of the
disposition of Defendants' motion, will be de-
nied.

claim of entitlement to the particular land-use rights they sought, with the result that they had no protectible property interest within the meaning of the Due Process Clause. Even if they had such an interest, the challenged action of Defendants was not, as understood for Section 1983 purposes, arbitrary and capricious.

## I. *FACTUAL BACKGROUND*

In 1989, Plaintiff SYLVIA DEVELOPMENT CORPORATION ("Sylvia") entered into a contract to purchase 97.2 acres of land in Calvert County for the purpose of developing a subdivision of single family homes to be known as "Blue Dolphin Estates." Plaintiff KAREL DOHNAL ("Dohnal"), a native of Czechoslovakia, but a U.S. citizen for some twenty years, was President, Chief Executive Officer and principal stockholder of Sylvia. Sylvia, through Dohnal, filed an application with the Calvert County Department of Planning and Zoning to increase the density of the proposed development from 22 lots to 38 lots under the County's Transfer Zone District (TZD) program. Under this program, owners of agricultural development rights may sell them to developers in less viable farmland settings, who are then able to develop a greater number of lots in those settings than would otherwise be possible. "Thus TZDs help preserve prime farmland and forestland," *Calvert County Zoning Ordinance*, Section 4–3.01.

Although the Department of Planning and Zoning approved Sylvia's application for increased density, the Commissioners of Calvert County denied the application. Sylvia thereupon appealed the decision to the Circuit Court for Calvert County, which reversed the decision of the Board on the grounds that it had acted without substantial evidence. At the Court's direction, the Commissioners subsequently issued an appropriate resolution granting Plaintiffs' application.

It is undisputed that the action of the Board in initially denying and thereafter approving the application consumed in excess of 30 months. Plaintiffs contend that this extended delay caused them considerable financial problems, including additional interest on their purchase money mortgage, a lost opportunity to offer the lots and projected houses for sale, and ultimately the prospective loss of the property in foreclosure. Plaintiffs bring this suit against the County and its Commission in vindication of constitutional rights they claim were denied them.

The Court considers Defendants' claim for summary relief.

## II. *STANDARDS FOR SUMMARY JUDGMENT*

Under Federal Rule of Civil Procedure 56(c), on the filing of a motion for summary judgment, judgment is to be entered if the entire record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party does not bear the burden of proof at trial, its burden in moving for summary judgment may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex, supra.* In such case, the movant typically supports its position by producing relevant excerpts from discovery responses, supplemented on occasion by affidavits. *Id.*

Once the movant makes a properly supported motion, the burden of production is then upon the non-movant to demonstrate the existence of a genuine dispute of material fact. At that point, the non-movant may not rest upon mere allegations or denials, but must by its own affidavits set forth "specific facts" showing there is a genuine issue for trial. The facts on which the non-movant relies need not necessarily be admissible at trial. *Id.*

The Court considers the totality of facts just as it would with a motion for judgment as a matter of law at the end of a case. *Anderson, supra.* It inquires whether, on the evidence before it, a reasonable trier of fact could make a finding by the applicable standard of proof, *e.g.* by a preponderance of the evidence. *Id.*

### III.  *EQUAL PROTECTION*

Under the Fourteenth Amendment to the U.S. Constitution, no State may "deny to any person within its jurisdiction the equal protection of the laws."  In their first Count, Plaintiffs contend that Defendants denied them that protection.[2]

For purposes of this claim, although corporate Plaintiff Sylvia proceeds on the assumption that it is the alter ego of individual Plaintiff Dohnal, it is not altogether clear what class of discriminated persons Plaintiffs consider Dohnal a part of.  The Complaint refers to Dohnal's "national origin" (Czechoslovakian) and his "immigrant" status (his date of immigration is unspecified, although he was naturalized in 1972), but at various points throughout their pleadings Plaintiffs also suggest that Dohnal's denial of rights stems from his status as "outsider" (he resides in Anne Arundel County), as "foreigner" (another alleged individual allegedly discriminated against was from Zimbabwe), as one of a group of "minorities" (a second alleged discriminatee was African–American, though not apparently an "outsider"), and finally from the simple fact that Dohnal alone was treated differently from another developer said to be similarly situated.

Wherever Plaintiffs might choose to come down on the matter, this much is clear: Plaintiffs challenge no statutory classification in this proceeding, but rather its application in fact.  But

> "(t)he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, cf. *McFarland v. American Sugar Co.,* 241 U.S. 79, 86–7 [36 S.Ct. 498, 501, 60 L.Ed. 899 (1916) ], or it may only be shown

by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, *Yick Wo v. Hopkins,* 118 U.S. 356, 373–4 [6 S.Ct. 1064, 1072–3, 30 L.Ed. 220 (1886) ].  But a discriminatory purpose is not presumed, *Tarrance v. Florida,* 188 U.S. 519, 520 [23 S.Ct. 402, 403, 47 L.Ed. 572 (1903) ]; there must be a showing of "clear and intentional discrimination," *Gundling v. Chicago,* 177 U.S. 183, 186 [20 S.Ct. 633, 635, 44 L.Ed. 725 (1900) ];  *see Ah Sin v. Wittman,* 198 U.S. 500, 507–8 [25 S.Ct. 756, 758–9, 49 L.Ed. 1142 (1905) ]; *Bailey v. Alabama,* 219 U.S. 219, 231 [31 S.Ct. 145, 147, 55 L.Ed. 191 (1911) ]."

*Snowden v. Hughes,* 321 U.S. 1, 13–14, 64 S.Ct. 397, 403–04, 88 L.Ed. 497 (1944).  *See also Talbert v. City of Richmond,* 648 F.2d 925, 929 (4th Cir.1981).

■ Plaintiffs' equal protection claim falters in virtually every respect.  Nothing in the record suggests direct discrimination against Plaintiff Dohnal;  indeed there is no basis to conclude that Defendants even knew of his national origin much less based their decision in any way upon it.  Nor have Plaintiffs provided any extrinsic evidence from which a reasonable trier of fact could conclude that Defendants clearly and intentionally discriminated against Plaintiffs on the grounds alleged.  Even assuming Plaintiffs were similarly situated to another applicant for TZD rights—an assumption by no means clear from the record—there is no basis other than sheer speculation for concluding that the different treatment of Plaintiffs resulted from purposeful discrimination.

However erroneous as a matter of state law Defendants' initial decision to deny Plaintiffs' rights may have been, whatever delays it may have occasioned, it cannot be concluded on this record that they acted with any clear intent of discriminating against Plaintiffs.  Their claim of denial of equal protection, therefore, fails as a matter of law.

---

2.  The equal protection claim is brought under 42 U.S.C.A. § 1983, which provides that:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

## IV. CONSPIRACY TO DENY EQUAL PROTECTION

■ Count II of the Complaint alleges that Defendants conspired to deny Plaintiffs equal protection of the law and is actionable under 42 U.S.C. § 1985(3).[3] Specifically Plaintiffs' claim that three Commissioners (Defendants Bowen, Stinnett, and Terhes) agreed "among themselves to refuse to apply the law and ordinances governing approval of Transfer Zone applications, to selectively impose new and previously unannounced requirements for aquifer capacity or proof of aquifer capacity for such approval, and to selectively find road capacity inadequate without a modicum of evidence to support the finding, while convincing evidence had been presented to support the finding of the Department of Planning and Zoning that road capacity was adequate." This contention may be disposed of summarily.

The Supreme Court emphasized in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) that:

"(t)he language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (Italics in original; footnote omitted)

403 U.S. at 102, 91 S.Ct. at 1798.

Again the absence from the record of evidence of purposeful intent on the part of Defendants to discriminate demolishes any claim of conspiracy. Necessarily the record also provides no basis for concluding that Defendants ever "conspired", *i.e.* agreed, concurred or combined, *see Black's Law Dictionary (5th Ed.),* to deny such rights, the first and foremost element of a § 1985(3) claim. *Griffin, supra.*

## V. DUE PROCESS

Plaintiffs' final claim is that Defendants' actions deprived them of their property without due process of law under the Fourteenth Amendment. Since they allege no deprivation of either a hearing or notice, the hallmarks of a procedural due process claim, *see Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), theirs is a claim of substantive due process denied.

It has been stated as a general rule that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process," *Bello v. Walker,* 840 F.2d 1124, 1129 (3d.Cir.1988), cert. den. 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988). The United States Court of Appeals for the Fourth Circuit, on several occasions, has considered substantive due process claims in the context of land-use planning decisions. In a recent pronouncement, *Biser v. Town of Bel Air*, 991 F.2d 100 (4th Cir. 1993), the Court once again posed the plaintiff's burden:

"In order ... to state a substantive due process claim, (one) must first demonstrate that he possesses a 'cognizable property interest, rooted in state law,' in the lost benefit. *See Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir.1983).... A property interest requires more than a 'unilateral expectation' that a permit or

---

**3.** According to that law:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

license will be issued; instead there must be a 'legitimate claim of entitlement.' *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In applying this standard of entitlement, we have held that if a local agency has 'any significant discretion' in determining whether a permit should issue, then a claimant has no legitimate entitlement and, hence, no cognizable property interest. *Gardner v. Baltimore Mayor and City Council*, 969 F.2d 63, 68 (4th Cir.1992)."

991 F.2d at 103–104.

Plaintiffs Sylvia and Dohnal acknowledge that the standard articulated in *Gardner* applies here:

"Under this standard, a cognizable property interest exists 'only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured. *RRI Realty, [Corp. v. Village of Southampton*], 870 F.2d [911] at 918 [ (2d Cir.1989) ]. Moreover, the standard focuses on the amount of discretion accorded the issuing agency by law, not on whether or to what degree that discretion is actually exercised."

969 F.2d at 68.

Plaintiffs argue that the applicable provisions of Calvert County Zoning Ordinance give the County Commissioners virtually no discretion in the matter of granting TZDs, and call attention to the decision of the Circuit Court for Calvert County which held that the record failed "to establish substantial evidence upon which the transfer zone application (of Plaintiffs) could have been denied." The state court's decision, Plaintiffs say, establishes incontrovertibly that Defendants' action vis-a-vis their application was arbitrary and capricious.

■ The Court looks first at whether Plaintiffs had a protectible property interest in the TZDs, for if not, even arbitrary denial of their application would not be actionable under Section 1983. *See Biser, supra*, 991 F.2d at 105.

Section 4–3.02 of the *Calvert County Zoning Ordinance* provides that:

"(t)he County Commissioners may designate a TZD if all the criteria for a TZD are met."

Section 4–3.03 of the ordinance sets out the criteria for TZDs:

"A. TZDs shall not be located in a Designated Agricultural Area.

B. TZDs shall not be located in the Resource Conservation or the Limited Development portions of the Critical Area or in areas designated as Critical Natural Areas of the Conservation Districts.

C. Development within a TZD shall comply with applicable county requirements including the following ordinances and regulations:

1) Subdivision Regulations

2) Storm Water Management Ordinance

3) Sediment Control Ordinance

4) Road Ordinance

D. The applicant must demonstrate adequate access as per section 4.3 of the Subdivision Regulations.

E. It is not the intent for the additional density in a TZD to adversely affect an APD.[4]

No Transfer Zone District shall be within 300 feet of an APD.

F. TZDs are only permitted within a major subdivision if the application consists of the entire subdivision. Those subdivisions which are only considered major subdivisions because of the creation of a right-of-way are exempt from this regulation."

Pursuant to Section 4.3 of the Subdivision Regulations, *i.e.* the County's adequate public facilities requirements, which is but one of the TZD criteria referred to above, roads and schools must be found adequate to "accommodate" the needs that will be generated by the development.

Despite Plaintiffs' vigorous argument, these ordinances vest sufficient discretion in the County Commissioners as to sink Plain-

---

**4.** "APD" stands for "agricultural preservation district," the special district wherein Calvert County seeks to promote the preservation of prime agricultural and forestry land. *Calvert County Zoning Ordinance,* § 4–2. APD's "act as a source of development rights for Transfer Zone Districts." *Id.,* § 4–2.01E.

tiffs' claim to a protectible interest under the Due Process Clause. *Biser's* Board of Appeals may have been required to consider eighteen separate factors in determining whether the exception sought adversely affected the general welfare, 991 F.2d at 104, but *Gardner's* Commission administered regulations that were "silent as to the substantive criteria used by the Commission to evaluate the sufficiency of those plans," 969 F.2d at 70, reserving to themselves only the right to examine plans further and enforce additional requirements when necessary and appropriate. *Id.* In both cases, administrative discretion sufficient to defeat a substantive due process challenge was found to exist. In similar fashion, Calvert County's Commissioners, in considering the grant of TZDs, are charged not only with reviewing an applicant's compliance with virtually all the County's land-development laws, including its adequate public facilities requirements, but they may also, pursuant to *Calvert County Zoning Ordinance,* Section 4–3.02, "impose conditions where necessary to protect nearby farmlands, environmentally sensitive areas, Historic Districts, or the rural atmosphere of Routes 2 and 4," a significant amount of discretion.

Equally important is the presence of the permissive word "may" in the ordinance setting forth that "(t)he County Commissioners *may* designate a TZD if all criteria are met." (Emphasis supplied) *Id.* "May" most assuredly implies a discretion which "shall", a word not used, just as certainly could have restricted. Perhaps Defendants' argument in the Calvert County Circuit Court cut too far. The County Commissioners may not, as Judge Rymer implicitly held, enjoy absolute and total discretion to deny application for TZDs that meet the criteria for approval—they still must have at least a debatable evidentiary basis for doing so—but that is not at all the same as saying that the Commissioners had little or no discretion in the matter.

The present case thus stands in marked contrast to *Scott v. Greenville County,* 716 F.2d 1409 (4th Cir.1983) where the Greenville (S.C.) County Council, expressly barred under the terms of its zoning ordinance from

involving itself in the building permit process, intervened extraordinarily to rezone property so as to prevent racially diverse low-income housing from being constructed.

But Plaintiffs argue that the decision of the Calvert County Circuit Court makes the arbitrary and capricious nature of Defendants' actions *res judicata.* What the Circuit Court may have held, however, is of no consequence to Plaintiffs' claim. Again the *Biser* Court disposes:

> "Arbitrary conduct standing alone does not create a legitimate claim of entitlement, even if it later leads to a state court judgment."

991 F.2d at 105. As the U.S. Court of Appeals for the Second Circuit pointed out in *RRI Realty Corp. v. Village of Southampton,* 870 F.2d 911 (2d.Cir.1989):

> "The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim."

870 F.2d at 918.

Even going beyond the "entitlement" inquiry that this Circuit is committed to in land use regulation cases, even recognizing the existence of a property interest and "asking whether local government has exceeded the limits of substantive due process in regulating the plaintiff's use of his property by denying the application arbitrarily and capriciously," *RRI Realty, supra,* 870 F.2d 918, the result would remain unchanged.

This is so because:

> "(t)he review undertaken by state courts for arbitrariness and capriciousness in land-use cases is of an entirely different order than that undertaken by federal courts in reviewing state and municipal decisions under the Due Process clause. *See Pearson [v. City of Grand Blanc ],* 961 F.2d [1211] at 1211 [ (6th Cir.1992) ]; *Shelton [v. City of College Station ],* 780 F.2d [475] at 482–83 [5th Cir.1986) ]."

*Gardner, supra,* 969 F.2d at 71, n. 3.

*Pearson v. City of Grand Blanc,* 961 F.2d 1211 (6th Cir.1992), cited by the Fourth Circuit in *Biser,* bears quoting:

> "The use of the term 'arbitrary and capricious' in this context causes considerable

confusion, because these same terms are also used to describe the scope of review by state courts of state administrative action. Therefore, it must be emphasized that the state court scope of review of a decision of a state administrative agency is far broader than the federal scope of review under substantive due process.

In some states, a state court may set aside a state action as 'arbitrary and capricious' on the ground, among others, that it is not supported by substantial evidence. No such ground may be used by the federal court in reviewing state administrative action in connection with a federal substantive due process attack, however. In the federal court the standard is a much narrower one. The administrative action will withstand substantive due process attack unless it 'is not supportable on any rational basis' or is 'wilful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.' " (Footnotes omitted)

961 F.2d at 1221. *See also Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023 (3d Cir.1987).

In the present case, it cannot be gainsaid that Defendants' action was at least supportable on some rational basis. As Commissioners, they concluded that Plaintiffs had failed to demonstrate that the proposed subdivision would be "served by access roads adequate to safely accommodate the vehicular traffic projected to be generated," per Section 4.3 of the County's Subdivision Regulations as required by Section 4–3.03 of its Zoning Ordinance. Calvert County Board of Commissioners Resolution No. 236–89 (8/22/89). They also concluded, based on a consultant's report, that there was inadequate water available for firefighting. *Id.* Finally, they determined that Plaintiffs' TZD "would be contrary to the public interest of Calvert County at this time." *Id.* Judge Rymer held that the Board's reliance on lay witnesses on the road access issue was insufficient as against a countervailing expert's study; that its determination as to water inadequacy was based on a report neither admitted into evidence nor shown to Plaintiffs on a timely basis; and that its Resolution that the application was contrary to the public interest lacked any supportive factfinding. But, again, none of this equates to saying that the Board acted arbitrarily or capriciously in the federal substantive due process sense. Neglectful of evidentiary requirements Defendants may have been, erroneous as well about the outside limits of their discretion; but their action was not "wilful and unreasoning" nor was it "irrational" as the *Pearson* case, *supra,* requires.[5] The upshot, therefore, is that, even if Plaintiffs had a protectible interest in the TZDs, Defendants in no respect contravened their substantive due process rights.

*Gardner, supra,* gives this case a final perspective:

"Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts. There is no sanction for casual federal intervention into what 'has always been an intensely local area of the law.' Rose, *Planning and Dealing: Piecemeal Land Controls as a Problem of Local Legitimacy,* 71 Calif.L.Rev. 839, 839 (1983). 'Federal judges lack the knowledge of and sensitivity to local conditions necessary to a proper balancing of the complex factors' that are inherent in mu-

---

5. Although he apparently felt constrained to devalue it, Judge Rymer noted that there was considerable citizen opposition to Plaintiffs' application for TZDs, particularly with respect to potential traffic problems. The Fourth Circuit's remarks in *Gardner, supra,* lend an interesting contrast:

"(W)e find nothing pernicious in the actions of the Sareva Drive residents in opposing Gardner's proposals. These residents were motivated to oppose Gardner's development by, among other things, the prospect of increased traffic congestion on the streets near their homes. Those who live near proposed development have the most significant personal stake in the outcome of land-use decisions and are entitled, under our system of government, to organize and exert whatever political influence they might have. Nor is it necessarily improper for municipal government to consider or act upon such political pressure. Such give-and-take between government officials and engaged citizenry is what democracy is about."

969 F.2d at 71–72.

nicipal land-use decisions. *Sullivan v. Town of Salem,* 805 F.2d 81, 82 (2d Cir. 1986). Further, allowing 'every allegedly arbitrary denial by a town or city of a local license or permit' to be challenged under § 1983 would 'swell[ ] our already overburdened federal court system beyond capacity.' *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985). Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes. Section 1983 does not empower us to sit as a super-planning commission or a zoning board of appeals, and it does not constitutionalize every 'run of the mill dispute between a developer and a town planning agency.' *Scott v. Greenville County,* 716 F.2d 1409, 1419 (4th Cir.1983) (quoting *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.1982)). In most instances, therefore, decisions regarding the application of subdivision regulations, zoning ordinances, and other local land-use controls properly rest with the community that is ultimately—and intimately—affected."

969 F.2d at 67–68.

The present case is yet another such instance.

Separate Orders will be entered granting Defendants' Motion for Summary Judgment and denying Plaintiffs' Motion for Partial Summary Judgment.[6]

### ORDER

Upon consideration of Plaintiffs' Motion for Partial Summary Judgment and Defendants' Opposition thereto, it is this 13 day of January, 1994

ORDERED that Plaintiffs' Motion is hereby DENIED; and it is further

ORDERED that Plaintiffs' Motion for Leave to Amend Complaint is hereby DENIED.

*AMENDED FINAL ORDER OF SUMMARY JUDGMENT*

Upon consideration of Defendants' Motion for Summary Judgment and Plaintiffs' Opposition thereto, it is this 13 day of January, 1994

ORDERED that Defendants' Motion is hereby GRANTED; and it is further

ORDERED that final judgment is hereby entered in favor of the Defendants and against Plaintiffs, costs to be paid by Plaintiffs.

---

**6.** Plaintiffs have pending a Motion for Leave to Amend Complaint by which they propose adding Counts for Intentional Interference with Prospective Advantage (Count IV), Malicious Interference with Prospective Advantage (Count V), Intentional Interference with Contracts (Count VI), and Malicious Interference with Contract (Count VII). With the Court's decision as to the original Complaint, only these newly proposed state claims would remain. Under the circumstances, the Court will deny Plaintiffs' Motion for Leave to Amend.