**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1483

LUCILE M. HORNE; OPHELIA M. HORNE,

            Plaintiffs – Appellants,

      v.

MAYOR & CITY COUNCIL OF BALTIMORE,

            Defendant – Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Richard D. Bennett, District Judge.
(1:07-cv-01110-RDB)

Argued:  September 22, 2009          Decided:  October 28, 2009

Before MOTZ and KING, Circuit Judges, and Mark S. DAVIS, United
States District Judge for the Eastern District of Virginia,
sitting by designation.

Affirmed by unpublished per curiam opinion.

John Henry Morris, Jr., LAW OFFICE OF JOHN H. MORRIS, JR.,
Baltimore, Maryland, for Appellants.  Matthew Wade Nayden, Chief
Solicitor, BALTIMORE CITY SOLICITOR'S OFFICE, Baltimore,
Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In April 2007, Lucile M. Horne and Ophelia M. Horne (the "Hornes") filed a civil action in the District of Maryland against the Mayor and City Council of Baltimore (the "City"), contending that the City had contravened the Hornes' Fifth and Fourteenth Amendment rights by granting a zoning variance on neighboring property without adequate notice or just compensation. By its Opinion and Order of February 27, 2008, the district court granted the City's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. See Horne v. Mayor & City Council of Balt., No. 1:07-cv-01110 (D. Md. Feb. 27, 2008) (the "Opinion").[1] The Hornes have appealed the dismissal and, as explained below, we affirm.

I.

A.

For many years the Hornes have owned a townhouse located at 1223 North Eden Street in Baltimore, Maryland.[2] As the end unit

---

[1] The Opinion is found at J.A. 13-24. (Citations herein to "J.A.___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[2] The facts recounted herein are derived from the allegations made in the Hornes' complaint, found at J.A. 3-10.

2

in a series of row houses on North Eden Street, their townhouse is attached on its southern side to the townhouse at 1221 North Eden Street. On its northern side, the Hornes' property abuts the rear of the lot at 1401 East Preston Street (the "Preston Street property"). Prior to 2002, the Preston Street property contained a townhouse and a small walkway on the rear portion thereof (the "setback"), the consequence of a Baltimore zoning stricture limiting construction to no closer than twenty-five feet of the rear property line (the "setback requirement").

In October 2002, the townhouse at the Preston Street property was firebombed because its residents, the Dawson family, had opposed the neighborhood's illegal drug trade. For nearly three years, the Preston Street property was essentially vacant, containing only the burned-out shell of the Dawsons' townhouse. In June 2005, developer James French sought to transform the ruins of the Dawsons' townhouse into a three-story community center, to be named in honor of the Dawson family. His initial building permit request was denied, however, as he had not received approval to use the Preston Street property for a community center or complied with the setback requirement. Thus, to secure the necessary approvals, French filed an appeal ("Appeal No. 497-05") with Baltimore's Board of Municipal and Zoning Appeals (the "Board").

3

The Board scheduled a public hearing to address the issues in Appeal No. 497-05 for July 12, 2005. A notice listing the time, date, and location of the public hearing was posted at the Preston Street property. Although not specifically mentioning the setback requirement issue, the notice explained that the public hearing would address "Appeal 497-05 for a permit to construct a new three-story community center on the[] premises." Opinion 3. Prior to the hearing, the Hornes saw the notice posted at the Preston Street property. The Hornes did not attend the hearing, however, as they then had no objection to the construction of the community center.

After the public hearing, the Board granted Appeal No. 497-05, including the requested variance from the twenty-five-foot setback requirement (the "setback variance"). Because the Hornes did not reside in their townhouse at 1223 North Eden Street, they were not aware that the setback variance had been granted until nearly a year later, in May 2006, when construction of the community center had progressed to the point that it abutted the northern wall of their property.

B.

On April 30, 2007, the Hornes filed their two-count complaint against the City under the provisions of 42 U.S.C. § 1983. In the first count of their complaint, they alleged that their property interest in the setback requirement had been

4

abridged without due process, in contravention of the Fourteenth Amendment, when the Board granted the setback variance for the Preston Street property without sufficient notice. In the second count of their complaint, the Hornes asserted that, due to the lack of such notice, the setback variance constituted an unconstitutional taking under the Fifth Amendment. More specifically, they alleged in the second count that "[b]y denying to Plaintiffs due and complete notice of the issues affecting their property . . . and to the extent that the Plaintiffs have suffered economic loss relating [thereto] . . ., the Defendants' zoning decision constitutes a taking under the Fifth Amendment . . . for which Plaintiffs have been denied just compensation." J.A. 9.

On September 11, 2007, the City moved to dismiss the entirety of the § 1983 complaint under Rule 12(b)(6), asserting that the Hornes lacked a constitutionally protected property interest in the setback requirement and thus failed to state any claim under the Fifth or Fourteenth Amendment upon which relief could be granted. By its Opinion of February 27, 2008, the district court agreed and granted the City's motion to dismiss. In so ruling, the court recognized that "to state a claim under both constitutional provisions, [the Hornes] must allege that they have a constitutionally protected property interest." Opinion 7. The court ruled that the Hornes' putative property

5

interest was "not a legitimate property interest giving rise to a § 1983 claim under either the Fifth or Fourteenth Amendment[]." Id. Specifically, the court concluded that the Board's retention of "unfettered discretion to grant or deny the requested variance" precluded the Hornes' assertion of any "constitutionally cognizable property right" in the setback requirement or any variances therefrom. Id. at 9.[3]

The Hornes have filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). See Duckworth v. State Admin. Bd. of Election Laws, 332 F.3d 769, 772 (4th Cir. 2003). Our focus in conducting such a review is on the legal sufficiency of the complaint, Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), and, in making our review, we must accept as true

---

[3] In the alternative, the Opinion observed that any property interest in the setback variance would belong only to the owners of the Preston Street property, in that a person cannot derive a property interest solely from the effect that neighboring property has on the value of one's own property. See Opinion 9-10. As explained below, the Hornes' Fifth and Fourteenth Amendment claims are insufficient because the Board's broad discretionary authority undermines their asserted property interest in the setback requirement. Thus, we need not further address the district court's alternate analysis.

the complaint's factual allegations and construe all facts and reasonable inferences in the light most favorable to the plaintiff, see Erickson v. Pardus, 551 U.S. 89, 94 (2007); Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). Nevertheless, to survive dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## III.

The Fourteenth Amendment bars the States and their instrumentalities from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. As the Supreme Court has observed, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests — property interests — may take many forms." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576 (1972).

The Fifth Amendment, pursuant to its Takings Clause, forbids the taking of private property "for public use without just compensation." U.S. Const. amend. V. By virtue of the Fourteenth Amendment, the Takings Clause applies to state and local governments, such as Baltimore City. Penn Cent. Transp.

7

Co. v. City of N.Y., 438 U.S. 104, 122 (1978); Ballard Fish & Oyster Co. v. Glaser Constr. Co., 424 F.2d 473, 474 (4th Cir. 1970). Under the Fifth Amendment, therefore, the City may not take an individual's property, either through governmental regulation or physical invasion, without just compensation.

Significantly, in order to state a claim under either the Fifth or the Fourteenth Amendment, the Hornes must allege a cognizable property interest. "Property interests, of course, are not created by the Constitution," but stem instead "from an independent source such as state law." Roth, 408 U.S. at 577. As such, we must assess whether, under either state or local law, the Hornes can legitimately assert a property interest in the setback requirement on the Preston Street property. In conducting this analysis, we are mindful that, to possess a protected property interest, one "must have more than an abstract need or desire for it . . . [or] a unilateral expectation of it," and "must, instead, have a legitimate claim of entitlement to it." Id.

First, we assess whether the Hornes' asserted property right stems from any principle of Maryland law. In its 1941 decision in Chayt v. Maryland Jockey Club of Baltimore City, the Court of Appeals of Maryland concluded that property owners had "no vested right in the continuance of [a restriction on neighboring property]." 18 A.2d 856, 859 (1941). "Since,

8

therefore, appellants acquired no vested right under the original Zoning Ordinance," Maryland's highest court ruled that, "it follows that the amending ordinance placing nearby properties in a lower classification . . . deprives appellants of no legal rights inasmuch as it takes nothing from them that they have a right to insist upon." Id. Predicated on this precedent, the Maryland courts have declined to forestall changes on one piece of property simply because of its effects on neighboring properties. See, e.g., Hoffman v. Mayor & City Council of Balt., 79 A.2d 367, 370 (1951) (explaining that "[i]f a residential neighborhood desires protection by a border of unused property, necessarily it must provide its own property, not appropriate its neighbors', for this purpose," as zoning restrictions exist "for the protection of the property restricted and not to give protection to surrounding property") (internal quotation marks and citations omitted); see also England v. Mayor & Council of Rockville, 185 A.2d 378, 380 (1962) ("Restrictions imposed under the police power must be related to the general welfare and cannot be supported on the basis of benefit to surrounding property.").

Second, to complete our analysis we must also assess whether any provision of local law — here the Zoning Code of Baltimore City (the "Code") — grants the Hornes a property interest in the setback requirement. In conducting this

9

assessment, we must adhere to the "claim of entitlement" standard that governs challenges to zoning and municipal decisions. See, e.g., Biser v. Town of Bel Air, 991 F.2d 100, 104 (4th Cir. 1993); Gardner v. Balt. Mayor & City Council, 969 F.2d 63, 68-69 (4th Cir. 1992). Pursuant thereto, if the Board possesses "'[a]ny significant discretion'" in deciding whether to grant the setback variance, the Hornes have "no legitimate entitlement and, hence, no cognizable property interest." Biser, 991 F.2d at 104 (quoting Gardner, 969 F.2d at 68) (alteration in original). This "standard focuses on the amount of discretion accorded the issuing agency by law," with "a cognizable property interest exist[ing] 'only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.'" Gardner, 969 F.2d at 68 (quoting RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 918 (2d Cir. 1989)). Thus, it is only when a zoning board is required by law to act in a specific way with respect to a particular zoning variance that a person can assert a cognizable property interest therein. See id.; accord Scott v. Greenville County, 716 F.2d 1409, 1418 (4th Cir. 1983).

Under the Code, the Board has been accorded broad discretion to "authorize a yard or setback that is less than that otherwise required by the applicable regulation." § 15-

10

203; see § 15-101. As with the zoning provision in our Biser decision, the Code requires the Board, in making a variance decision, to determine, inter alia, that the variance will not "create hazardous traffic conditions," "otherwise endanger the public safety," "be detrimental to or endanger the public health, security, general welfare, or morals," or "in any way be contrary to the public interest;" the Board must also determine that "the variance is in harmony with the purpose and intent of th[e] article." § 15-219; see Biser, 991 F.2d at 104 (observing that "[i]t is difficult to imagine a more flexible standard"). To be sure, one of the required determinations is that "the variance will not[] . . . be injurious to the use and enjoyment of other property in the immediate vicinity[] or . . . substantially diminish and impair property values in the neighborhood." § 15-219. The fact that specific factors guide the Board's disposition of a variance request, however, in no way nullifies the reality that the Board possesses the discretion to make such determinations, and to either grant or deny a requested variance. In other words, contrary to the Hornes' assertion, the Board's discretion to grant a setback variance exists independent of a determination, by way of example, that a particular variance will not adversely affect neighboring properties or will be in harmony with the purposes of the Code. See § 15-203.

11

Because the Code grants the Board broad discretion in deciding whether to grant a setback variance, the Hornes possessed only a unilateral expectation in that regard. See Biser, 991 F.2d at 104. Hence, the Hornes had "'no protectable property interest'" in the setback variance. Gardner, 969 F.2d at 69 (quoting United Land Corp. v. Clarke, 613 F.2d 497, 501 (4th Cir. 1980)). Since the Hornes had no property interest in the setback variance, they also had no property interest in a setback requirement from which a variance could, in the Board's discretion, be granted.[4] In short, the Board's broad discretion obviates any claim by the Hornes of a constitutionally cognizable property interest arising under either the Fifth or Fourteenth Amendment.[5] As such, the district court correctly

---

[4] Because the Board had such discretion to act with respect to the setback variance, it is immaterial whether the asserted property interest is characterized as, inter alia, in the setback requirement, the setback variance, or the Board's decision regarding the variance.

[5] The Hornes also assert a property interest in the process by which the Board makes its zoning decisions. But, "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim v. Wakinekona, 461 U.S. 238, 250 (1983). Thus, absent an underlying property interest, the Hornes possess no procedural due process rights in the zoning decision proceedings. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996) (explaining that "the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered") (internal quotation marks omitted).

dismissed the complaint in its entirety for failure to state a claim upon which relief can be granted.

## IV.

Pursuant to the foregoing, we affirm the district court's dismissal of the complaint.

<u>AFFIRMED</u>

13